FIRESTONE TIRE & RUBBER CO. v. RIVERSIDE BRIDGE CO.

(Circuit Court of Appeals, Sixth Circuit.   January 17, 1918.)

No. 3029.

1. APPEAL AND ERROR ☞1022(1)—REVIEW—FINDINGS.
     The concurrent findings of a master and the trial judge will not be disturbed on appeal, upon any less than a demonstration of plain mistake; this being especially true where the trial court's opinion showed that the master was well fitted to discharge his duties, and that the judge most painstakingly scrutinized the report and exceptions.

2. CONTRACTS ☞350(1)—CONSTRUCTION—EVIDENCE.
     On a bill to foreclose a mechanic's lien, a finding by the master, concurred in by the lower court, that the contractor was equitably entitled to a month's extra time for completing the work by reason of defendant's delays and other unavoidable delays, held not contrary to the evidence.

3. CONTRACTS ☞284(4)—BUILDING CONTRACTS—ARBITRATION.
     Where a building contract provided for submission of claim for extension of time of construction to the owner's engineers, and for arbitration in case of dissent from their decisions, a presentation of claim for extension, and its rejection by the engineers or arbitrators, would bar it.

4. CONTRACTS ☞284(4)—BUILDING CONTRACTS—EXTENSIONS—ARBITRATION.
     In such case the rejection of the claim by the engineers or arbitrators is final, though the engineers pass on the question whether their own default caused delay which, under the contract, entitled the contractor to an extension.

5. DAMAGES ☞122—BUILDING CONTRACTS—EXTENSION OF TIME.
     A building contract, which made the contractor's obligation to complete erection of the steel work by dates named conditional upon the absence of delays, due to rolling mill, transportation, or other circumstances beyond the contractor's reasonable control, further declared that, if the contractor should be delayed by any act, neglect, or default of the owner, or delay due to rolling mills, the time for completion should be extended for a period equivalent to the time lost, and that such period should be determined and fixed by the owner's engineers, but no allowance should be made unless a claim therefor should be presented in writing to the engineers within 48 hours of the occurrence of the delay.   There was a further provision for arbitration in case of dissatisfaction with the engineers' award.   Due to numerous short delays, occurring in a brief space of time, the contractor was delayed for at least a month.   The contractor continued work, and the engineers gave an estimate which the defendant owner refused to pay; its previous notice of a willingness to arbitrate not having been acted upon.   After completion of the building, the contractor sued for the balance of the contract price and for extras, and defendant demanded a foreclosure of its lien, which, as the action was in the federal court, necessitated the filing of a bill on the equity side of the court.   Defendant answered, setting up its damages by reason of the contractor's delay, and by a cross-bill prayed a decree for the amount of its damages, less the amount of the contract price, unpaid.   Held, that where, in such suit, there was little doubt that an extension for at least a month would have been given, had the contractor so asked, and as it continued work long after the lapse of the contract period, and defendant accepted the work, defendant, which in reality was claiming damages in a court of equity, falls within the rule that he who seeks equity must do equity, and the contractor is entitled, on the computation of damages for its delay, to have the case treated as if the period for completion had been extended for at least one month.

6. CONTRACTS ⬦⟹322(4)—ACTIONS—EVIDENCE.

   In a suit by a contractor to foreclose his lien for payment due, *held*, that a finding by the master, concurred in by the trial judge, that the contractor's steel erection was on a certain date so far completed as not to substantially interfere with follow-up trades, should not, under the evidence, be rejected as erroneous.

7. DAMAGES ⬦⟹163(2)—MINIMIZING DAMAGES—BURDEN OF PROOF.

   While it is the duty of a party not in default to minimize the damages arising from the opposite party's default, the burden of proving that the damages could have been mitigated is upon the party asserting it.

8. EVIDENCE ⬦⟹595—BURDEN OF PROOF—CONSIDERATION OF EVIDENCE.

   Though the burden of proving an issue be on a particular party, inferences may be drawn from testimony, regardless of its source.

9. DAMAGES ⬦⟹189—BUILDING CONTRACTS—EVIDENCE.

   A finding by the master, concurred in by the trial judge, to the effect that the defendant owner did not use reasonable efforts to minimize its damages, resulting from the contractor's breach, *held* not so contrary to the evidence that it could be disturbed on appeal.

10. DAMAGES ⬦⟹140—ADEQUACY—BUILDING CONTRACTS.

    In a suit by a contractor to foreclose its lien, the award of damages on account of the contractor's delay in completion of the building *held*, under the evidence, adequate.

11. DAMAGES ⬦⟹122—BUILDING CONTRACTS—DELAY IN COMPLETION.

    Where a delay in completion of a building was due, partly to the default of the contractor (in a certain time proportion only) and partly to the default of the owner, the contractor is not liable in damages for the owner's loss of rentals by reason of the delay.

12. COSTS ⬦⟹158—ALLOWANCE—OVERRULING OF OBJECTIONS TO MASTER'S REPORT.

    Where, because the master's original report was not sufficiently full to permit a disposition of the exceptions thereto without an original examination by the court of all testimony presented, the court re-referred the cause, no allowance of costs under general equity rule 67 (198 Fed. xxxvii, 115 C. C. A. xxxvii), should be made on account of objections and exceptions to the master's first report overruled, which were practically duplicated in the exceptions and objections to the second report.

Appeal from the District Court of the United States for the Northern District of Ohio; John H. Clarke and John M. Killits, Judges.

Bill by the Riverside Bridge Company against the Firestone Tire & Rubber Company. From a decree for complainant, defendant appeals. Modified, and, as modified, affirmed.

Amos C. Miller and Miller, Gorham & Wales, all of Chicago, Ill., and Hills & Van Derveer, of Cleveland, Ohio, for appellant.

Arthur A. Stearns and Stearns, Chamberlain & Royon, all of Cleveland, Ohio, for appellee.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. By written contract dated May 25, 1910, and completely signed three days later, appellee, whom we shall call plaintiff, agreed to provide materials for and perform the work connected with the fabricating and erecting of the structural steel and iron work, including stairwork, for a reinforced steel factory building of appellant, hereinafter called defendant. At defendant's instance, the structural steel was to be purchased by plaintiff from the Carnegie

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company, with whom defendant had friendly business and personal relations. Defendant was to complete the foundations for the structure on or before July 14. This being done (as well as other things required of defendant, not necessary to enumerate), plaintiff was to begin the erection on July 14, and to complete the steel framework by September 2, and the stairwork by September 12 following, provided there were no delays due to rolling mills or other circumstances beyond plaintiff's reasonable control. The concreting and brickwork were to be done by defendant through a contractor working on a cost plus percentage basis, and plaintiff's contract provided for agreement between plaintiff, defendant's engineers and the concrete contractor upon a method by which plaintiff's work should be so begun and prosecuted as to permit the concrete contractor to begin work as soon as practicable after plaintiff's erection of the structural steel should be begun. Plaintiff's work was not fully completed until about December 1 to 7, 1910. Defendant, however, accepted the work as it progressed and finally, and made during the progress of the work four payments (aggregating 70 per cent. of the contract price, based on estimates provided for by the contract), the first on July 15 and the last on October 25, 1910; the concreting and brickwork, as well as the work of the other "follow-up" trades being carried on in conjunction with and following plaintiff's steel erection.

The bill in this cause is filed to enforce a mechanic's lien for the full amount of the contract price, together with the value of certain extra work done and payments made by plaintiff for defendant's benefit. No question is made of the regularity and effectiveness of the lien proceedings, nor of plaintiff's right to recover its full claim, except as affected by defendant's asserted claim for damages due to plaintiff's delay in performing its work—consisting of increased cost of concreting and bricking in cold weather, plus rental of the building during the period of delay. The special master to whom the issues were referred found that plaintiff's erection of the superstructure was actually begun August 9; that the steel was not shipped by the Carnegie Company until 30 to 50 days after the order date (in fact, there was an average interval of 38 days); that the defendant's engineers held 60 out of 116 of plaintiff's drawings from 12 to 31 days after their receipt, and in several instances from 1 to 19 days even after their approval by the engineers; that the necessary time for approving these drawings was from 2 to 4 days; that it was impossible to determine the extent to which the delays of the engineers and of the Carnegie Company postponed fabrication, but that by reason of these delays plaintiff was entitled to have the date for completion extended a month or more, had it so asked; that the erection proper was practically finished November 9—that is to say, leaving only the "plumbing-up"—and that the plumbing-up was done as fast as needed; that the erection proper was thus practically finished about a month later than it should have been, after allowing plaintiff a month's extra time; and accordingly deducted upwards of $11,000 from the amount to which plaintiff would otherwise be entitled, and rendered decree in plaintiff's favor for the balance. The District Judge (the present Mr. Justice Clarke pre-

siding) overruled the exceptions to the master's report, thereby concurring in the master's findings, and entered decree on the basis found by the master for upwards of $28,000, with interest from the date of the master's report. The defendant alone appeals.

[1] It is the well-settled rule, applicable to cases such as this, that the concurrent findings of master and judge upon questions of fact will not be disturbed upon anything less than a demonstration of plain mistake. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Crawford v. Neal, 144 U. S. 585, 586, 12 Sup. Ct. 759, 36 L. Ed. 552; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649. In Judge Clarke's opinion confirming the master's report that officer is referred to as "an experienced lawyer and longtime common pleas judge of Cuyahoga county, Ohio," and presumably the appointment was made by reason of the special fitness of the appointee. The evidence was voluminous and intricate, involving the testimony of a large number of witnesses and many exhibits. The record indicates that the master performed his duties with painstaking care and fidelity; the judge stating in his opinion that the master "spent more than 30 days listening to the testimony introduced, heard elaborate oral arguments, and considered written arguments, which, although called 'briefs,' are several hundred pages in extent." Numerous exceptions were taken to the master's report, and the judge re-referred the case to that officer for fuller and more detailed report of his findings of fact and conclusions of law, "with reference to the pages of the testimony upon which the findings of such fuller report shall be based." While the exceptions were overruled, as not presented in the required form, yet the court examined their merits "as fully as if they had been properly presented" for consideration. Judge Clarke expressly says that he has "gone very carefully through this voluminous record, and is satisfied that the special master was amply justified, considering the conflict of testimony before him, in reaching the conclusion which he reports," and without regard to the rule of presumption in its favor. These facts emphasize the force otherwise given to the findings below. Wabash Ry. Co. v. Compton (C. C. A. 6) 172 Fed. 17, 21, 96 C. C. A. 603.

Turning to the fundamental and meritorious questions on which the decision below was made to rest:

[2] 1. We cannot declare unjustified a conclusion that plaintiff was equitably entitled to a month's extension of time for completing its contract, on account of delays occasioned by circumstances not reasonably within its control. The delays at the rolling mills and in the engineer's office have already been referred to. True, there was criticism of plaintiff's method of "picking-off" from the drawings and ordering from the mills as creating unnecessary delay; but there was competent testimony that such practice was proper and expeditious. It does not necessarily follow that plaintiff was at fault in not more closely following the rolling mills' schedules, nor is absence of fault on the part of the rolling mills necessarily conclusive that the delay was within plaintiff's reasonable control. There was also criticism of plaintiff's practice in fabricating at its shop at one time, as far as possible, all

of certain like members throughout the building, instead of first fabricating materials for each wing, in the order of erection; but the master found this method of fabricating proper, and we see no reason to reject his conclusion. There was also criticism that some of the delay was caused by imperfect fabricating and by an asserted improper and inconvenient piling of materials at the building site; but there was testimony that some of the steel shipped from the rolling mills was so bad that it had to be knocked to pieces, and that representatives of defendant's engineers actually inspected at plaintiff's factory all the various fabrications alleged to have been defective, and while such inspection and approval did not necessarily forbid rejection of the defective work before its erection in the building, it had a tendency to mitigate delay on plaintiff's part occasioned thereby. The asserted improper method of piling does not seem to have been of controlling importance.

[3-5] Article 7 of the contract, however, provides that, if plaintiff should "be delayed in the prosecution or completion of the work, delay due to rolling mills, by the act, neglect or default of the owner, upon the work, or by any damage caused by fire * * * or other casualty for which the contractor is not responsible, or by strikes or lockouts caused by acts of employés, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid." The language above quoted is followed by this clause, "which extended period shall be determined and fixed by the engineers; but no such allowance shall be made unless a claim therefor is presented in writing to the engineers within forty-eight hours of the occurrence of such delay;" and article 12 provides that in case either party to the contract dissents in writing within 10 days from the decision of the engineers referred to in article 7, the matter shall be referred to a board of arbitration, to be made up as provided therein. This provision was not complied with; and defendant urges that plaintiff is, for the purposes of this suit, thereby wholly barred from equitable consideration by reason of delays suffered, and (inferentially), even though not responsible for them.

Assuming that the provisions cited control the controversy in the instant case, a presentation of claim for extension and its rejection by the engineers or arbitrators would bar it (United States v. Gleason, 175 U. S. 588, 605, 20 Sup. Ct. 228, 44 L. Ed. 284); and the fact that the engineers were required to pass upon the effect of their own default would not alter the rule (Memphis Trust Co. v. Iron Works [C. C. A. 6] 166 Fed. 398, 405, 93 C. C. A. 162). But plaintiff presented no claim for extension, and the contract does not in terms make application to the engineers a condition precedent to further indulgence.[1] Apart from the fact that the provisions of articles 7 and 12 do not seem readily workable as applied to a series of numerous short delays

---

[1] Defendant, at the time, treated the November estimate as an extension of time, and gave notice of willingness to arbitrate. But nothing seems to have been done under the notice, and neither party in this court treats the estimate as an extension, as we think it plainly was not.

occurring in a brief space of time, no one of which could perhaps be made the basis of formal application for a specific extension of time, and assuming these articles otherwise applicable, we think they do not exclusively control the question as here presented, for article 6 expressly makes plaintiff's obligation to complete erection by the dates named absolutely conditioned upon the absence of delays "due to the rolling mills, transportation, * * * or other circumstances beyond the contractor's reasonable control"; and we think the history of this case, and defendant's attitude thereto, preclude it from here asserting the bar now urged. Plaintiff first began suit, on the law side of the court below, to collect the balance of the contract price and for extras. Defendant, under the Ohio statute, demanded foreclosure of the lien which, in the federal court, could be had only in equity. The bill in this case was accordingly filed. Defendant answered, setting up its damages by reason of plaintiff's delay, and by cross-bill asked decree against plaintiff for the amount of defendant's damages "less that part of the contract price for the erection of the said structural steel and iron work still unpaid," and for an injunction (which was granted) restraining the prosecution of the suit at law on the ground that the issues involved therein, and in the equitable suit, "are too complicated and involved to be intelligently passed upon" in a court at law. Defendant is, in this suit, practically a plaintiff suing for damages. There is little, if any, room for doubt that an extension of at least a month would have been given, had plaintiff so asked. Plaintiff continued its work long after the lapse of the contract period, the defendant accepted it, and, as already stated, its engineers gave plaintiff an estimate of such work, and although defendant protested, and refused to pay the estimate, by its answer and cross-bill it pretty nearly concedes that plaintiff is entitled to some consideration in respect of time, by asserting a necessity that plaintiff should complete its work under the contract "within the time therein provided or within a reasonable time thereafter, to wit, 30 days." In our opinion, the case is one for the application of the rule that "he who seeks equity must do equity." Without reference to the fact that the contract did not stipulate the measure of damages for delay, we agree with the conclusion of Judge Clarke that:

"The court, with the full concurrence of the defendant, has before it for determination the amount due to the plaintiff or to the defendant."

[6] 2. Was plaintiff's steel erection so far completed by November 9 as not thereafter to interfere substantially with the follow-up trades?

Above the first story the building was divided by courts into eight so-called wings. It was arranged that wings 4 and 5 should be first erected, and wings 1 and 8 last; the idea being that the concreting should follow the steel work as rapidly as practicable, the brickwork to follow the concreting. This arrangement aided defendant in hastening final completion; except for it, defendant would have been in default, for its preliminary work (except as needed to meet steel erection in the given wings) was not all finished by the time required by the written contract. The actual erection of the steel work was followed by its bolting and plumbing. The steel work in wings 4 and 5

was so far completed that the placing of forms for concreting on the lower floor was begun September 1, although the pouring was delayed until September 21. There was evidence that on November 9 the forms on the first floor of wing 8 were ready for concrete, although there was still some bolting and plumbing to be done and roof bars to be supplied; also that on November 12 the steel work in wings 1 and 8 was practically all erected, although "very little plumbed." The most substantial controversy in this respect arises over defendant's contention that the bolting and plumbing did not progress rapidly enough to permit the concreting and bricking to follow without substantial interruption. Among the more prominent reasons for this asserted impracticability are that concreters and bricklayers were unwilling to and could not effectively work while steel erection or bolting was being done upon the upper floors. There was testimony, however, tending to sustain conclusions that bolting can be done before complete plumbing; that concrete could be poured whenever two floors were properly bolted and plumbed; that concrete was actually and customarily poured in the lower parts of a building while steel work was still being done on the upper floors; and that such practice was feasible and proper. The questions involved were purely of fact. In view of the record, and of the care with which both the master and the judge have considered the maze of testimony, we cannot say that the conclusions reached were wrong.

[7-9] 3. Did defendant use all reasonable efforts to minimize its damages?

Its duty so to do is properly conceded. Warren v. Stoddart, 105 U. S. 225, 26 L. Ed. 1117; Lawrence v. Porter (C. C. A. 6) 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167. The burden of proving that the damages could have been mitigated is on plaintiff. Campfield v. Sauer (C. C. A. 6) 189 Fed. 576, 580, 111 C. C. A. 14, 38 L. R. A. (N. S.) 837. But inferences may be drawn from testimony, regardless of its source.

In reaching the conclusion that defendant did not use due diligence, the master found that defendant might have finished the concreting by December 15 (6 weeks before it was actually completed); that the forms could have been taken down in 5 or 6 days after pouring the concrete; that the brickwork might have been started September 11 (it seems to have been actually started October 26); that each wing could have been bricked in 21 days, and the last wing thus finished on January 12; and that while the concrete "was in" on wing 1–8 (the last wing—perhaps meaning a certain floor) on December 3, brickwork was not started "on that floor" until about February 11. If these conclusions are justifiable, the ultimate finding that due diligence was not used should not be disturbed; for there is no claim that defendant needed the building before March 1, and on the basis of the master's conclusions it does not necessarily appear that it should not have been available for use by that date.

Defendant forcibly challenges each of these subsidiary conclusions, as well as the ultimate conclusion of the master. But we should not be justified in overturning them, unless the intervention of cold weather

was clearly so controlling as plainly to show that the master was in error. There is no doubt that extremely cold weather makes concrete work more expensive; it delays the setting, requires heating of materials and packing of the new work, calls for a mixture richer in cement, and decreases efficiency of labor. The master found, however, that defendant was at fault in connection with the heating and packing after cold weather came on; that weather conditions were not extreme up to December 31; that canvas was not used, so as to enable the building to be heated, until December 27; that packing material as a substitute for heating was first used December 31; and that, if artificial heating means had been used, the work could have progressed as rapidly in cold weather as in moderate weather. These conclusions present no little difficulty. For instance, the conclusion that concrete forms could be taken down in 5 or 6 days after pouring does not rightfully apply to floors; but there was testimony tending to show that the outside of columns (and possibly the inside) could be bricked before floors were ready for stripping. And while there was testimony by defendant that concreting could progress as rapidly in cold weather as in temperate weather, if provisions are made to offset the temperature, there was evidence from the same source that other operations in connection with concreting (such as handling and fastening rods and making forms) go more slowly in cold weather. But there was testimony that the forms were usually constructed before putting in place, and we cannot say with confidence that a holding, in spite of such testimony, that with sufficient additional labor and sufficient heating accommodations the concreting could have progressed approximately as rapidly in cold as in moderate weather would be clearly wrong; and plaintiff was charged with a substantial sum for extra cost of concreting. And while not affirmatively finding, upon our own judgment, that the conclusions referred to are right, we cannot say that, so far as necessary to the ultimate conclusion, they are substantially and clearly wrong.

[10, 11] 4. Damages. The master found that the first half of the concreting was finished by November 22, and the last half about the last of January; that all the increased cost in cement due to cold weather, and most of the lumber, came after December 18; that all the cost of heating and canvas was after December 27. He found all that part of the extra cost of construction arising after December 15 to be wholly defendant's fault, by reason of its failure to minimize its loss, and all that part of the extra cost of construction prior to December 15 to be the fault of both parties. He further found that it was impossible to work out in detail the various items of extra expense due to delay, and that an approximation was thus necessary; that the additional cost of the last half of the concreting (November 22 to January 31) was $25,-596.61; and that much of the extra cost came after December 15.[2] He concluded that plaintiff should be charged with one month's delay

---

[2] No claim is made for additional cost of the first half of the concreting, finished November 22. Defendant practically concedes that, if it could have completed the "follow-up" work by January 1, there would have been no additional cost of construction.

and one month's extra cost due to winter work. The master's computation of defendant's damages, as announced in his first report, viz. 40 per cent. of the then unpaid balance of the original contract price, does not impress us as resting upon a rational basis. But, if he rightly concluded that plaintiff was responsible for the delay only in the time proportion stated, the amount awarded (upwards of $11,000) is not clearly shown to be inadequate. In such cases there would be no liability for lost rentals. The master's second report and findings did not state the basis of the assessment of damages. We do not feel justified in disturbing the award.

[12] 5. Defendant filed 50 so-called "objections" and 59 exceptions to the master's first report, and 91 objections to that officer's supplemental report. The District Court, properly treating the objections to the second report as exceptions, awarded plaintiff, as part of its costs, under general equity rule No. 67 (198 Fed. xxxvii, 115 C. C. A. xxxvii), $705, viz. $5 for each of 141 objections overruled.

We are disposed to agree with defendant that the exceptions to the master's first report should not have been considered in computing costs, for the reason that they were practically duplicated in the exceptions to the second report; and the order re-referring the cause to the master was made after it came on for hearing upon the exceptions to the first report, and because the court was of opinion that that report was not sufficiently full and detailed to permit a disposition of the exceptions thereto without an original examination by the court of all testimony presented, although the final order shows that the hearing was had upon exceptions to both reports. It may also be that the findings challenged by exceptions 20 and 21 to the supplemental report are of such breadth as to entitle defendant to costs, and, if so, the same considerations would apply to exception 30, although we are not satisfied that any of the findings or failures to find in the supplemental report which are excepted to are of such controlling character as necessarily to make the master's ultimate conclusions wrong. We are thus inclined to think a reduction from $705 to $425 on account of exceptions overruled would be equitable, and such modification will be made.

6. Plaintiff has presented, as against defendant's right to damages, several objections of a more or less technical nature, which, in view of the conclusions otherwise reached, we find it unnecessary to pass upon.

The decree of the District Court, as modified in paragraph 5 hereof, is affirmed. By reason of such modification, and the fact that appellant has already paid the greater part of the costs of this court, no costs in this court will be awarded to either party.