BUCHMAN et al. v. MILLVILLE MFG. CO.

(Circuit Court of Appeals, Second Circuit. February 7, 1927.)

No. 124.

1. Sales ⬅89—Buyer's retaining notice, modifying original contract and receiving installments thereunder, constitutes acceptance.

Buyer's retaining, without comment, notice alleged to contain substantial variations from original contract, so as to constitute an offer to modify original terms, and receiving installments thereunder, with payment of one, held to constitute an acceptance.

2. Sales ⬅180(2)—Buyer's acceptance and payment for installment excuses seller's default in failing to deliver proper amount (Personal Property Law N. Y. § 125, subd. 1, added by Laws 1911, c. 571).

Under Personal Property Law N. Y. § 125, subd. 1, added by Laws 1911, c. 571, seller's default in failing to deliver full amount of installment is excused by buyer's acceptance and payment therefor.

3. Sales ⬅176(3)—Buyer's failure to complain of short and delayed deliveries excused seller as to delays in installment (Personal Property Law N. Y. § 126, subd. 2, added by Laws 1911, c. 571).

Under Personal Property Law N. Y. § 126, subd. 2, added by Laws 1911, c. 571, buyer's failure to make complaint of short or delayed deliveries, and request to be relieved from further installments on account of being overstocked, held to excuse any delay in installments as showing that delay was not breach so material as to justify refusal to proceed further.

4. Sales ⬅345—Seller's notice to buyer of intention to tender delivery constitutes offer of delivery, authorizing recovery of purchase price (Personal Property Law N. Y. § 144, subd. 3, added by Laws 1911, c. 571).

Seller's notice to buyer of intention to tender delivery of goods as they become due under terms of contract, and sending invoices as goods were ready, though not loading them on cars, held to constitute an offer to deliver, and notice that goods were to be held as bailee, and sufficient to authorize recovery for purchase price, under Personal Property Law N. Y. § 144, subd. 3, added by Laws 1911, c. 571.

5. Sales ⬅342—Seller held not precluded from recovering on buyer's refusal of deliveries because of completing manufacture, in exercise of reasonable judgment (Personal Property Law, N. Y. § 145, subd. 4, added by Laws 1911, c. 571).

Where seller, on buyer's refusal to accept further deliveries under terms of contract, completed manufacture in exercise of reasonable judgment in holding down the loss, recovery is not thereby precluded, under Personal Property Law N. Y. § 145, subd. 4, added by Laws 1911, c. 571, requiring seller to do nothing toward carrying out contract after receiving notice of repudiation.

6. Sales ⬅357(1)—Buyer has burden on issue of application of law requiring seller to do nothing more toward contract after buyer's repudiation (Personal Property Law N. Y. § 145, subd. 4, added by Laws 1911, c. 571).

Buyer, after refusing further deliveries under contract, has burden of proving application of Personal Property Law N. Y. § 145, subd. 4, added by Laws 1911, c. 571, requiring seller, on repudiation of contract, to do nothing further toward carrying it out.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Millville Manufacturing Company against Julius Buchman and others. Judgment for plaintiff, and defendants bring error. Affirmed.

The action was for the purchase price of a parcel of cotton yarn sold by the plaintiff to the defendants, and for the most part rejected by them. On May 11, 1920, the parties agreed to the sale of 25,000 pounds of yarn to be manufactured by the plaintiff and

shipped to the defendants, no less than 2,500 pounds weekly, beginning as early as possible in September, 1920, f. o. b. Millville, New Jersey, at $1.15 per pound, payment on the tenth of each month following shipment. The broker who negotiated the contract sent bought and sold notes to the parties on the day when the contract was made. On May 13, 1920, the plaintiff sent a notice of this contract to the defendants, which, as the defendants asserted, varied the terms of the contract in some particulars not necessary here to set forth. To this notice the defendants did not reply.

2. The plaintiff made its first delivery of 1,694 pounds on September 25, 1920, which the defendants received in due course without comment. On October 5, 1920, it made a second delivery of 2,484 pounds, which they similarly received. The defendants paid for the first shipment on October 10, 1920, still without comment on the short and delayed deliveries. On October 14, 1920, they wrote the plaintiff, asking for cancellation of the balance of the contract, because they were "overloaded with yarn of this kind and cannot make use of the additional quantity." No mention was yet made of the short or delayed deliveries. The plaintiff having declined to cancel, the defendants wrote on October 18th, that the plaintiff had "failed to comply with material terms in the contract," and had so given them "the right to declare the contract at an end." The plaintiff at once answered, on October 19th, demanding acceptance, and concluding with the words: "We are charging you with 2,500 pounds of yarn, which will be held at Millville subject to your order."

After further correspondence, in which the parties adhered to their positions so taken, the plaintiff on October 26th wrote: "We will either ship the yarn to you, invoice it, and hold for shipping instructions, or we will hold you responsible on account of your refusal to accept unfilled balance of the contract." Finally, on November 9th, it wrote: "It is our intention to tender you delivery of the goods as they become due under the terms of the contract and to hold you responsible for the contract price."

4. The plaintiff completed the third installment on October 19, 1920, of 2,524 pounds, and billed the defendants therefor. The rest of the yarn was substantially all made up after the 19th, and was never shipped f. o. b. Millville, but invoices were sent for the several installments as they were completed, which were kept on hand, deliverable, should the defendants call for them.

In September, 1920, the market for such yarns fell fast, and, according to the only evidence in the case, on October 19th, there was substantially no market for them at all. This condition continued through November, there being only two offers known to the single witness sworn, of which one was of the defendants themselves. The plaintiff proved that it had bought all the cotton necessary for the contract on May 26th at 47 cents, and before October 19th had in part worked it up, so that its cost had then become 54.05 cents. It also proved that further labor and material were necessary to make it into yarn in the sum of 23.53 cents, so that the total cost of the yarn to the plaintiff was 77.58 cents. The profit was therefore 37.42 cents. So far as could be ascertained, the market for cotton in the autumn of 1920 was about 21.5 cents, but the cotton on hand on October 19th could not be sold as such, having been, as just said, already partially worked up. The net value of this cotton, had the work been stopped, could not therefore be certainly ascertained, except that it was less than the market.

6. Thus the plaintiff's loss, had it stopped making yarn, would have been more than 32.55 cents, which, with its profit, came to 69.97 or 70 cents a pound, the measure of its damages in a suit upon the contract. While, as has been said, there was no proper market value for the yarn in October, 1920, the only sales of anything near the yarns in question were at 47 and 51 cents, neither of them of the same grade as that in the contract.

7. The plaintiff pleaded that the yarn could not be sold at a reasonable price, and that it notified the defendants that it would hold it "subject to their orders," when completed.

8. The District Court directed a verdict for the full contract price.

Louis Marshall and Arthur Frank, both of New York City, for plaintiffs in error.

Everett, Clarke & Benedict, of New York City (Herman S. Hertwig and John P. Allee, both of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] We take up the objections to the recovery in the order that they are presented. The first is that the plaintiff's notice of May 13, 1920, said to vary the terms of the broker's bought and sold notes, was a counter-offer, which prevented the closing of a contract. This notice was clearly intended

to be nothing but an advice that the defendants' order had been entered on the plaintiff's books, and a description of what the plaintiff supposed to be its terms. It was not at all an offer of itself. Such variations as can be spelled out from it make no difference in meaning, so far as we can see; but we need not analyze them nicely. The contract was closed when the broker made the contract, and it was evidenced by the bought and sold notes. Butler v. Thomson, 92 U. S. 412, 23 L. Ed. 684. The plaintiff could not vary the obligation so incurred by any notice sent to the defendants thereafter. Yet, if there were substantial variations, and if the notice could be twisted into an offer to modify the original terms, the defendants retained it without comment, received two installments under it, and paid for one. That was an acceptance. [2, 3] The next question is of the plaintiff's default in its deliveries. Assuming that the installment of September 25th was short enough to justify rescission, the default was excused by acceptance and by payment on October 10, 1920. Section 125 (1) of the New York Personal Property Law, added by Laws N. Y. 1911, c. 571. The delivery of October 5th was short only 16 pounds out of 2,500, scarcely enough for rescission under section 126 (2) added by Laws 1911, c. 571; but we need not pass on that point. It, too, was accepted without objection before the payment for the first installment. Furthermore, the letter of October 14th made no complaint as to short or delayed deliveries, but, on the contrary, asked to be relieved from any further installments whatever, because the buyer was overstocked. This excused any delay in the third installment; more properly it showed that delay was not a breach "so material as to justify the injured party in refusing to proceed further." Section 126 (2). Thus on October 18th the defendants had no excuse for its repudiation, and stood like any other buyer who wishes to evade a contract which has become burdensome.

The only point of importance in the case is whether the plaintiff could recover the purchase price under section 144 (3) of the New York Personal Property Act added by Laws 1911, c. 571. The defendants raise several points:

First, they say that the pleading was defective, and should have followed the language of subdivision 3; that is, that the seller must plead in the very words that he did "notify the buyer that the goods are thereafter held by the seller as bailee for the buyer." "Bailee," they say, means that the title has passed, and the section does not otherwise apply. This is flatly in the face of subdivisions 2 and 3, which expressly assume that title has not passed, therein being in contrast with subdivision 1. The word "bailee" is not a talisman; to hold the goods subject to the buyer's order conforms with the statute both in respect of pleading and proof.

[4] As to the installment delivered on October 19th, the letter of that date expressly shows the seller's purpose. We agree that the letter of October 26th was equivocal, the seller apparently not being yet quite certain of his course. But uncertainty was at an end upon November 9th. The phrase, "It is our intention to tender you delivery of the goods as they become due under the terms of the contract, and to hold you responsible for the contract price," in view of the buyer's repeated refusals to accept, could only have been meant as an "offer to deliver," and as notice that the goods would be held "as bailee for the buyer"; that is, at his disposition. While, of course, the seller did not load the yarn f. o. b. its factory, it did send invoices as the several installments were ready. This, taken with what has gone before, meant that each installment was then tendered and would be so held. The statute in this regard was satisfied.

[5] Since it was proved that there was no market for the goods, there remains only the question whether section 145, subdivision 4, of the Personal Property Law, added by Laws 1911, c. 571, applied. We pass without discussion the argument that the reference in section 144, subdivision 3, to section 145, should not be limited to subdivision 4 of that section. Section 145, subdivision 4, was only meant to forbid the seller to increase the buyer's damages by continuing work on the goods; it is no more than an instance of the general rule that the injured person must co-operate in holding down the loss, a doctrine which first appeared in this application in Clark v. Marsiglia, 1 Denio (N. Y.) 317. It does not apply when the result of completing the work is to give a greater value to the finished product than the added cost so incurred. Such a course is in the buyer's interest, whose salvage is so much the greater than if the seller were to stop at his word.

In the case at bar the seller's costs and profits, had he stopped manufacture, were, as appears above, 70 cents. The contract price being $1.15, it follows that, if the completed yarn had a market value of 45 cents or more,

it was to the buyer's interest not to stop the work on October 19th. Strictly speaking, it is impossible to fix its value on that day, but such evidence as there is indicates that the yarn was worth more than 45 cents a pound. At least, we may say that, being then forced to a decision whether to stop or go on, the seller exercised a reasonable judgment in deciding not to stop, and that this continued to be true throughout November, when the work was done. The net value of the partially worked-up cotton was certainly speculative; the market for the yarn had suffered a sudden collapse, from which it might recover; the seller was not primarily in the business of selling cotton, but yarn. These made it, in our judgment, a reasonable choice, which is all that the defaulting buyer can demand.

[6] Further, we think that the buyer has the burden on that issue in any event. Such is the rule in the case of ordinary contracts. Lillard v. Kentucky, etc., Co., 134 F. 168, 178 (C. C. A. 6); Stamey v. Hemple, 173 F. 61 (C. C. A. 9); Campfield v. Sauer, 189 F. 576, 580 (C. C. A. 6); Firestone, etc., Co. v. Riverside Bridge Co., 247 F. 625, 631 (C. C. A. 6). We can see no reason for an exception here. It is indeed true that section 144 (3) gives the seller a remedy which has been debated, and which appears here as a compromise. It is possible to argue that both the conditions imposed are precedent, and that the seller must show that they exist. But we are not disposed to press the form of the language so far. It seems to us that the draftsmen meant no more than to impose upon the seller's right the limitation which it had borne before, without any change of procedural incident. This not only avoids discriminating against this remedy by a condition which applies to no other, but accords, we think, with the merits of the situation, which courts have generally thought to require the promisor to shoulder the burden.

The plaintiff's two notices of proposed amendments to its complaint were perhaps proper as evidence, but were in no sense conclusive.

[On this record, the case was apparently submitted on June 5, 1923, and decided on February 26, 1926. It is, of course, always possible that the parties may have been slow in submitting their briefs, but on its face the record shows an unaccountable delay. We can see no excuse for printing in the bill of of exceptions over 50 pages of the colloquy of counsel.]

Judgment affirmed.