## Weintrob's Estate.

Argued January 8, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Harry J. Gerber,* with him *Samuel Feldman,* for appellant.

376

*Henry Panfil,* of *Moore, Gossling & Panfil,* for appellee, cited: Filby v. Miller, 25 Pa. 264; Himes v. Herr, 3 Pa. Superior Ct. 124; Kissick v. Hunter, 184 Pa. 174; Taylor v. Siers, 63 Pa. Superior Ct. 564.

OPINION BY MR. JUSTICE WALLING, January 28, 1929:

This appeal is from the amount awarded Albert Rosenberg, a creditor (herein called the claimant), in the adjudication of Jacob Weintrob's Estate. The case depended very largely on questions of fact and the record discloses nothing which calls for extended consideration.

On April 7, 1927, the claimant and Weintrob entered into a written agreement by which the former undertook to furnish the material and erect for the latter a store and dwelling at 6133 Rising Sun Avenue, Philadelphia, for the sum of $6,500, one thousand dollars payable when the foundation was set in place and the balance by installments as the work progressed. On May 16th of the same year, having the foundation set, claimant sought Weintrob for the one thousand dollars and learned that he had died on the 28th day of the preceding month. The residuary legatee's husband directed claimant to Samuel Feldman, Esq., of the Philadelphia Bar, who represented the estate. Feldman said in effect, that the estate had no funds and declined to make any payment on the contract and in June, 1927, directed claimant to quit the job, which he did. Whether an attorney at law, as such, can breach a client's contract is not important here, for Feldman respresented both the executor and residuary legatee of the Weintrob Estate and they at least impliedly ratified his act and to this day have fully acquiesced therein. The contract as drawn expressly bound Weintrob's executor.

At the same time claimant had a separate contract to convert and did convert a garage on the premises into a store building for $300. Admittedly this item should be paid. What amount should be allowed for the breach of the main contract is the principal question here in-

volved. Claimant's bill, as finally presented, is for $3,-393.67, which includes the $300. After hearing and duly considering the evidence, the auditing judge awarded the claimant $2,939.70, which included the admitted item of $300 and $1,839.70 as the cost of material and labor on the main job. We have reviewed each item comprising the latter and find it within the evidence, except as hereinafter stated. In some instances there was a conflict in the proof as to values, etc., and the auditing judge followed the weight of the evidence. In any event, his findings were approved by the court in banc and so far as supported by sufficient evidence we are concluded thereby: Stevenson's Est., 272 Pa. 291; Patterson's Est., 237 Pa. 24, 27; Comly's Est., 185 Pa. 208; Keyser's App., 124 Pa. 80.

We have encountered some difficulty as to material which was on the ground but not incorporated in the building when the contract was breached. Until permanently attached it remained the personal property of the contractor (claimant). In 9 C. J. 732, the rule is stated thus: "When the builder is to furnish the materials and labor for the performance of a contract requiring the erection of structures on the land of the owner, the materials generally remain the property of the builder until they are affixed to the land of the owner or are delivered to and accepted by him as his property." See also Johnson v. Hunt, 11 Wendel 136. One item of this material, however, was structural steel cut in special sizes for this job and practically of no value elsewhere, except as scrap. This the claimant has left on the premises for the use of the owner and in our opinion as to it the rule applicable to articles of personalty made under a special order and without market value should be applied. That is, the maker of such article may tender delivery thereof and recover the contract price. As to such articles of personalty, section 63 (3) of the Sales Act of May 19, 1915, P. L. 543, 561, provides: "Al-

though the property in the goods has not passed, if they cannot readily be resold for a reasonable price,...... the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price." This was a restatement of the existing law: Pure Food Co. v. Dodson, 281 Pa. 125, 129; Ballentine v. Robinson, 46 Pa. 177; Ritter Conserve Co. v. Kolb, 62 Pa. Superior Ct. 296; Fisher Hydraulic Stone & Machinery Co. v. Warner, 233 Fed. 527. Hence, we conclude that the $210 was properly allowed claimant for the structural steel.

We can find no evidence, however, to support the allowance of the $170 for lumber. Some was left stacked or piled on the premises, where so far as appears it still remains. A small amount perhaps had been placed in the building, but how much, or of what value, is totally uncertain. That any of the lumber so stacked upon the premises had been cut in special sizes, or so prepared as not to be saleable, nowhere appears. This lumber remains the property of claimant and that item should be deducted from his bill. This does not involve the first floor joists for which he is credited as a separate item. The complaint as to a small item for painting, is without substantial merit and is not covered by any assignment of error.

The proof supports the auditing judge's finding that claimant would have made an actual profit of $800 on the job had he been permitted to complete it. This was a direct loss resulting from breach of the contract and was properly allowed: Dravo Contracting Co. v. Rees & Sons Co., 291 Pa. 387; Bates v. Carter Construction Co., 255 Pa. 200, 208. The other questions called to our attention were properly disposed of by the auditing judge and need no special mention.

The credit of $170 for lumber is stricken from claimant's award, leaving the principal thereof $2,769.70; as so modified the decree is affirmed and the appeal is dismissed at the costs of Jacob Weintrob's Estate.