LANNOM MANUFACTURING COMPANY, Appellant, v.
STRAUSS COMPANY, Appellee.

No. 46495.

OCTOBER 17, 1944.

Tomasek & Vogel, of Grinnell, and D. W. Harper, of Creston, for appellant.

Thos. E. Mullin, of Creston, for appellee.

MILLER, J.—Plaintiff's petition, filed January 5, 1940, asserted that on or about July 28, 1939, plaintiff sold and delivered to defendant 117 pairs of shoes at a price of $2 per pair and demanded judgment for $234, with interest and costs. The answer was a general denial. Trial was had to the court without a jury. The court found that there had been a breach of contract, but that plaintiff's remedy was for damages, not for

the contract price; that there was no basis in the pleadings or the evidence for a judgment for damages because plaintiff made no attempt to plead or prove specifically what damages it suffered. Accordingly, the court dismissed the action. Plaintiff secured the necessary certificate from the trial court and appealed to this court, asserting that, under the evidence, it was entitled to judgment for the contract price.

The evidence showed that plaintiff is the assignee of the Hildebrand Shoe Company and stands in its stead. We will treat them as though but one entity were involved herein. On May 22, 1939, defendant placed a written order with plaintiff for 131 pairs of shoes at $2 per pair to be delivered August 1, 1939, with payment of the contract price due sixty days later. Plaintiff's letter of acceptance, dated May 24, 1939, incorporated a form letter which contained a stipulation that it would not be possible to consider cancellations after shoes have been cut. On June 10, 1939, all of the shoes ordered by defendant had been cut except Stock No. 1414 (14 pairs). On that day defendant advised plaintiff to cancel the entire order. Six days later defendant advised plaintiff to reinstate the entire order. On July 24, 1939, plaintiff received a letter from defendant again canceling the entire order, to which plaintiff replied by letter dated July 26, 1939, as follows:

"In accordance with our previous correspondence, we proceeded with the balance of your order for fall shoes. We now find that all styles except No. 1414 have been cut, and of course we are unable to cancel that portion of your order. We are, however, cancelling No. 1414 and will make delivery of the balance as soon as the shoes are ready."

On July 28, 1939, the shoes were shipped to defendant, reaching defendant's place of business on August 2, 1939. Defendant refused to accept delivery. The only reason given was that the order had been canceled. The carrier notified plaintiff of the refusal of defendant to accept delivery. Plaintiff refused to have anything to do with the merchandise. The shipment was held in storage by the carrier and at the time of trial storage charges of about $84 had accumulated.

G. S. Lannom, general manager for plaintiff, testified, in part, as follows:

"The shoes were to be made for the Strauss Company on that order. They were made on that order and they were shipped out according to that order. * * * The account of two hundred thirty-four dollars, as above described, is an indebtedness of the Strauss Company. Said account is now the property of the Lannom Manufacturing Company and has not been paid. * * * We carried no stock at that time. The shoes in connection with this account were made up specially for the Strauss Company on their order. * * * These shoes were not what is known as standard shoes. We make up a line of samples which we offer to the trade. They could make any changes; in fact, build their own shoes. The shoes represented in this order were not shoes that were carried by us as standards. We had no stock and no standard shoes. * * * Q. Are there any peculiar sizes in that order? A. Yes, narrow width; extreme in sizes. Large and small size extremes. Q. It is an average order for that many shoes, isn't it? A. Yes. * * * The shoes in controversy were shipped to Creston on July 28th, 1939. Prior to the time they were shipped, we received a letter cancelling that order. * * * Q. On July 24th the rest of those shoes weren't completely ready for shipment, were they? A. A good portion of them were. Q. Do you know of your own recollection what portion was ready for shipment? A. It takes approximately two weeks from the time shoes are started in production to be packed. We made complete shipment of the order on July 28th, four days after the cancellation notice was received, so a good many of them must have been completed. * * * By the term 'put in process' we mean that as soon as we cut a piece of leather, the skin, with a die, it is in process. We can't withdraw it after that without a loss. Then the operation of making the shoe proceeds and it is put in process until it is completed. The shoes that we made up in connection with the claim here were made up according to the way they were ordered. They were merchantable goods. * * * By 'merchantable goods' we mean salable generally, and the goods shipped out July 28th, 1939, were a shipment of goods that were salable to the general public as of that time."

Mr. Lannom further testified that the extra-narrow widths in plaintiff's order could not be readily sold at wholesale and that plaintiff did no retail business. He stated:

"It is customary in the shoe business, instead of trying to do the thing you are talking about, to put these styles on a close-out list and go to a merchant and say, 'I have a certain number of pairs of shoes. Here are the size runs. As an inducement to buy the size run as is shown on this list we will make a reduction in price.' * * * we make the reduction in price because he has to take the sizes you offer. He hasn't a free selection of sizes and widths."

He also testified that no attempt was made to dispose of defendant's order in any such fashion; that it was questionable what their loss would have been; defendant ordered 12 pairs of AAAA last, which plaintiff no longer handles.

Paul Brink, office manager for plaintiff, testified that, at the time of trial, the shoes shipped defendant would probably be worth more than the contract price, that he was not in a position to say what they were worth and that could only be determined by offering them for sale as an odd-lot stock of shoes; that plaintiff had not entertained any thought of doing that and would not take them back under any circumstances; as far as plaintiff was concerned, the shoes belonged to defendant; they were made specially for defendant and were a type of shoe that plaintiff never had in stock; they were always made up on the order of a customer.

The trial court inferentially determined that the contract was not subject to cancellation and that there was a breach thereof by defendant. The decisive question was the proper measure of damages. Plaintiff insisted that it was entitled to the contract price. Defendant insisted that the only remedy available was an action for damages. The trial court agreed with defendant's theory, and, since plaintiff had not asked for damages and had made no effort to introduce any evidence which would support a judgment for damages, the action was dismissed at plaintiff's costs. While several assignments of error are presented to us, the vital issue still remains: Is plaintiff entitled to recover the contract price herein?

I. The trial court determined that the law, on the measure of damages in a case such as this, is prescribed by sections 63, 64, and 65 of the Uniform Sales Act [chapter 396, Acts of the Thirty-eighth General Assembly], which appear respectively as sections 9992, 9993, and 9994, Code, 1939. The parties do not question that. The dispute arises over which section is to be controlling here. The trial court held that section 9993 is controlling. Plaintiff, on the other hand, relies upon section 9992.

In New Prague Flouring Mill Co. v. Spears, 194 Iowa 417, 434, 189 N. W. 815, 822, we stated:

"Subject to his liability to such damages, the right to refuse performance inheres in every executory contract, no matter how stringent or specific."

Prior to the enactment by the legislature of the Uniform Sales Act, in 1919, this court was committed to the rule that the seller of goods could not recover the purchase price from the buyer unless the title had passed. In Pate v. Ralston, 158 Iowa 411, 413, 414, 139 N. W. 906, 907, 51 L. R. A., N. S., 735, decided in 1913, we stated:

"The theory on which recovery of the purchase price is allowed notwithstanding the vendee's repudiation of the contract is that by performance on his part the vendor has vested title in the vendee; possession being retained by the vendor for him, and for this reason the latter is entitled to the purchase price. [Citing cases.] 'In all cases of contracts for the sale of personal property, where it has any market value, the vendor, before he can recover of the vendee, must have delivered the property to the vendee, or have done such acts as vested title in the vendee, or would have vested the title in him if he had consented to accept it, for the law will not tolerate the palpable injustice of permitting the vendor to hold the property, and also to recover the price of it.' Shipps v. Atkinson, 8 Ind. App. 505, (36 N. E. 375); Dwiggins v. Clark, 94 Ind. 49, (48 Am. Rep. 140). To permit the vendor to retain title and recover the purchase price would be intolerable, but this is precisely the situation of plaintiff. The fruit trees and shrubs had not been set apart for defendant as had the butter for the vendee in Mitchell

v. Le Clair, 165 Mass. 308, (43 N. E. 117). Nor had delivery been effected or even tendered.''

Of course, if the title to the shoes had passed to defendant, then, under subparagraph 1 of section 63 of the sales act (section 9992 (1), Code, 1939), plaintiff could maintain an action for the contract price. However, under section 19 of the sales act (section 9948, Code, 1939), relating to intention of the parties as to the passing of title, rule 2 provides:

''Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such things be done.''

Here the contract was for 117 pairs of shoes to be manufactured, so that title would not pass under said rule 2 until the shoes had been manufactured. 46 Am. Jur. 598, and cases cited under note 18.

It is undisputed that, before the order was completely made up, defendant repudiated the contract by attempting to cancel it. However, notwithstanding such repudiation, plaintiff completed the order and shipped it to defendant. The case appears to be somewhat analogous to that of Moline Scale Co. v. Beed, 52 Iowa 307, 3 N.W. 96, 35 Am. Rep. 272. In that case, on April 4, 1877, the defendant contracted for several scales to be manufactured by the plaintiff. On the day that the order was given, defendant sent a telegram to plaintiff countermanding the order and directing that the scales be not shipped. The telegram was confirmed by letter. The plaintiff replied that the scales would be held until April 10, 1877, for an explanation of the telegram, and receiving none, shipped the scales. Defendant refused to accept them and they were left in the freight depot. Plaintiff brought suit for the contract price. The case was tried to the court without a jury, resulting in a judgment for the defendant. On appeal to this court the judgment was affirmed.

The foregoing decision of this court was rendered prior to the enactment of the Uniform Sales Act in this state. The contentions of counsel for plaintiff amount to this: A reversal

of the judgment herein is in order because the third subparagraph of section 9992 permits recovery of the contract price although title had not passed to defendant when it attempted to repudiate the contract. This subparagraph provides as follows:

"Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, and if the provisions of subsection 4 of section 9993 are not applicable, the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

Plaintiff has attempted to deliver the goods to defendant and has treated them as belonging to defendant. This was the equivalent of offering to deliver the goods and notifying the defendant that they were held for defendant. Pratt Chuck Co. v. Crescent Insulated Wire & Cable Co., 2 Cir., N. Y., 33 F. 2d 269 [certiorari denied 280 U. S. 583, 50 S. Ct. 34, 74 L. Ed. 633]. The questions then arise whether the shoes could not readily be resold for a reasonable price and whether subsection 4 of section 9993 is applicable.

II. Section 9993 provides for the recovery of damages by the seller when the buyer wrongfully refuses to accept the goods. The trial court held that defendant wrongfully refused to accept the shoes plaintiff had manufactured and that plaintiff could have recovered damages if it had so framed its pleadings and supported them with the necessary evidence. The court determined that plaintiff was limited to an action for damages because it failed to establish the necessary facts to render subsection 4 inapplicable herein. The provisions thereof are as follows:

"If, while *labor or expense of material amount* are necessary on the part of the seller to enable him to fulfill his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered

if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages.''

Plaintiff contends that said provisions are not applicable herein because, under the record, the production was so far advanced that no ''labor or expense of *material amount*'' was necessary. Reliance is had upon the case of Buchman v. Millville Mfg. Co., 2 Cir., N. Y., 17 F. 2d 983, 985, wherein Judge Learned Hand, in construing the New York Uniform Sales Act, in which section 145 corresponds to section 9993 of our Code, stated as follows:

''Section 145, subdivision 4, was only meant to forbid the seller to increase the buyer's damages by continuing work on the goods; it is no more than an instance of the general rule that the injured person must co-operate in holding down the loss, a doctrine which first appeared in this application in Clark v. Marsiglia, 1 Denio (N.Y.) 317. It does not apply when the result of completing the work is to give a greater value to the finished product than the added cost so incurred. Such a course is in the buyer's interest, whose salvage is so much the greater than if the seller were to stop at his word.

''In the case at bar the seller's costs and profits, had he stopped manufacture, were, as appears above, 70 cents. The contract price being $1.15, it follows that, if the completed yarn had a market value of 45 cents or more, it was to the buyer's interest not to stop the work on October 19th. Strictly speaking, it is impossible to fix its value on that day, but such evidence as there is indicates that the yarn was worth more than 45 cents a pound. At least, we may say that, being then forced to a decision whether to stop or go on, the seller exercised a reasonable judgment in deciding not to stop, and that this continued to be true throughout November, when the work was done. The net value of the partially worked-up cotton was certainly speculative; the market for the yarn had suffered a sudden collapse, from which it might recover; the seller was not primarily in the business of selling cotton, but yarn. These

made it, in our judgment, a reasonable choice, which is all that the defaulting buyer can demand.

"Further, we think that the buyer has the burden on that issue in any event. Such is the rule in the case of ordinary contracts. Lillard v. Kentucky, etc., Co., 134 F. 168, 178 (C.C.A. 6); Stamey v. Hemple, 173 F. 61 (C.C.A. 9); Campfield v. Sauer, 189 F. 576, 580 (C.C.A. 6); Firestone, etc., Co. v. Riverside Bridge Co., 247 F. 625, 631 (C.C.A. 6). We can see no reason for an exception here."

Applying the foregoing pronouncement to the record herein, we are disposed to the view that plaintiff's decision to complete the shoes did not unreasonably increase defendant's damages. The shoes had been "put in process" on June 10, 1939. The repudiation occurred on July 24, 1939, just a week before the shoes were to be delivered. The order was completed and shipped on July 28th, four days after the repudiation occurred. Certainly but little remained to be done. Defendant's wrongful act required plaintiff to make a decision. Strictly speaking, it was probably impossible to fix the value of the shoes in the process of manufacture on the day that the contract was repudiated by defendant. Plaintiff was in the business of selling shoes, not miscellaneous parts or unfinished products. While the evidence is not as clear as we might desire, we believe that there was substantial evidence that the choice made by plaintiff was not unreasonable.

The trial court, in passing on the question, stated:

"The evidence in this case shows, at the time the cancellation letter was written by the Strauss Company, that the work on these shoes wasn't completed. * * * There has been no effort on the part of the plaintiff to show what material, labor and expense had gone into these shoes at the time the cancellation of the order was received, or how much was necessary to complete the shoes according to the contract."

By the foregoing pronouncement, the court placed the burden of proof on plaintiff. In Judge Hand's decision, above quoted, the burden is placed on the defendant. The cases which Judge Hand cited apply the rule that, where a plaintiff seeks

damages for a wrongful act of defendant, plaintiff has a duty to minimize his damages, but the duty of proving that the damages could be minimized is on the defendant. In Iowa this rule appears to be covered by statute. Sections 11172, 11173, Code, 1939. These statutes treat the matter as a special defense which must be pleaded by the defendant or he is limited to matters shown by or growing out of the plaintiff's testimony.

The analogy which Judge Hand makes seems reasonable. The pleadings herein were wholly inadequate to present the issues developed by the evidence. Essentially, questions presented by the evidence were these: Plaintiff contracted to manufacture shoes for defendant at an agreed price. The shoes were manufactured and shipped to defendant. Defendant refused to accept the goods. Plaintiff treated the goods as belonging to defendant and sued for the contract price. But defendant asserted that, before the shoes were completed, it repudiated the contract. The repudiation was wrongful as to those shoes that had been cut. Counsel for defendant concedes, "There isn't any question but what there was a breach of contract." But defendant asserted that plaintiff could recover only the damages that had been suffered up to the time of the repudiation. Plaintiff could not increase the damages by completing the manufacture of the shoes. The repudiation occurred forty-four days after the shoes were "put in process" and four days before the order was completed and shipped. Did plaintiff increase the damages by completing the order after the repudiation occurred? If the evidence is unsatisfactory, who had the burden of proof on this narrow issue? We agree with Judge Hand that the issue pertains to a special defense asserted by defendant. It was error for the court to place the burden of proof on the plaintiff. Under the record as made, the court erred in holding that subsection 4 of section 9993 was controlling herein.

III. This brings us to the question whether the shoes could not readily be resold for a reasonable price within the contemplation of section 9992 (3). The trial court made no finding on this question because of its conclusion that the applicability of subsection 4 of section 9993 had not been negatived. We are disposed to the view and hold that there was

substantial evidence on the issue, and, in view of our holding in Division II of this opinion, supra, there should have been a decision on the question.

In the case of Freiberg Mahogany Co. v. Batesville Lbr. & Veneer Co., 6 Cir., Ohio, 285 F. 485, 489 [certiorari denied 261 U. S. 624, 43 S. Ct. 519, 67 L. Ed. 832], the court points out that the term "available market" in subsection 3 of section 64 of the sales act (section 9993 (3), Code of Iowa), must be construed with the provision as to "reasonable price" in subsection 3 of paragraph 63 of the act (section 9992 (3), Code of Iowa). In that case it was held that evidence that the purchase price was substantially more than what the rejected lumber would bring supported a negative answer to the special interrogatory, "Could the goods have been readily resold at a reasonable price on or about September 27, 1920?"

In the case of Buchman v. Millville Mfg. Co., supra, 2 Cir., N. Y., 17 F. 2d 983, the court held that evidence that the market for yarn had suffered a sudden collapse supported a finding that the yarn in question could not be readily resold for a reasonable price. In Henderson Tire Co. v. Wilson, 235 N. Y. 489, 139 N. E. 583, the court reversed a judgment for defendant and held that evidence that special tires had been made up in odd sizes which were difficult to sell was a sufficient showing that the goods could not be readily resold at a reasonable price.

In the case of Illustrated Postal Card & Novelty Co. v. Holt, 85 Conn. 140, 145, 81 A. 1061, 1063, where an order of Christmas cards was refused by the buyer, the court states:

"The finding that there was no available market for the goods after the breach, and that jobbers and wholesalers place no orders after April for such goods, and that these goods are not goods kept in stock, but are manufactured on special order, fully shows that the goods could not be sold for a reasonable price. There was no obligation upon the manufacturer to sell these cards at retail or to the retail trade—that would have involved the undertaking on its part of a new business."

In the case of In re Weintrob's Estate, 295 Pa. 374, 145. A. 425, it was held that structural steel specially cut for a

108

building could not be readily resold for a reasonable price. In Everedy Mach. Co. v. Hazle Maid Bakers, 334 Pa. 553, 6 A. 2d 505, an icing machine specially built for defendant was held to be goods that could not be readily resold for a reasonable price.

The record herein shows that the shoes were made specially for defendant. Plaintiff had no shoes in stock and sold no shoes at retail. The size run was such that the shoes could only be disposed of at a discount by finding a buyer willing to accept the particular size run. We think that the evidence would warrant a finding that the shoes could not readily be resold for a reasonable price within the contemplation of subsection 3 of section 9992.

This action is at law and is not triable de novo here. While we have discussed the evidence, it is not to be inferred that we intended to determine any of the questions of fact in the case. On a retrial, all questions of fact will be for determination in the trial court.—Reversed and remanded.

MANTZ, C. J., and HALE, SMITH, GARFIELD, WENNERSTRUM, and MULRONEY, JJ., concur.