## Somerset Door & Column Company *v.* O. M. Weber Company, Appellant.

*Contract—Sale—Lex loci—Custom.*

Where a manufacturer is requested to quote a price and he does so f. o. b. the place of residence of the proposed customer, and six weeks thereafter the customer requests an order to be booked for a certain amount of goods at the price quoted, and the manufacturer accepts the offer, the place of the contract is fixed by the place of the acceptance; and if the contract is to be construed in the light of a trade custom, it is the custom of the place of acceptance and not of the place from which the offer is made, that will prevail. In such a case the letters f. o. b. followed by the name of the customer's residence were intended to fix a price beyond which no charge could be made against the vendee either by shipper or carrier, and did not necessarily imply that they were to be delivered at the place mentioned as a consideration of the contract.

Argued Dec. 9, 1909. Appeal, No. 134, Oct. T., 1909, by defendants, from judgment of C. P. Montgomery Co., June T., 1908, No. 18, on verdict for plaintiffs in case of Somerset Door & Column Company v. O. M. Weber Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for breach of a contract to purchase goods. Before WEAND, J.

The facts appear by the opinion of the Superior Court.

Defendants presented these points:

19. The contract was made in Somerset, Pennsylvania. *Answer:* Affirmed. [1]

11. In the absence of evidence to show the existence of the custom alleged in this case at the place where the contract was made and was to be performed, which was the borough of Somerset, Pennsylvania, there could be no presumption that plaintiffs were familiar with them, and they cannot be bound by them. *Answer:* Affirmed, but if the custom referred to was general, uniform and notorious,

plaintiffs might be bound by such custom. It is not necessarily the case that they would be bound, but they might be bound. [2]

The court charged in part as follows:

[The defendants, however, have raised another point which probably may solve this trouble, although that is entirely a question for you. Defendants testify that before these doors had been made, on July 31 they wrote a letter to the plaintiff company in which they called their attention to this fact: "Our plan is after the usual construction and is according to the underwriters' specifications." You have had explained to you what the National Board of Underwriters is; an association composed of insurance companies whose rules and regulations govern the method of insurance on certain buildings. Naturally, if you or I wanted to erect a factory and wanted insurance on it, we would be likely to inquire what the rules and regulations of the insurance companies were, so that we might procure insurance on our building. Now it appears that, under the rules of this underwriters' association, for fire doors white pine is required. You have had the rule read to you and the reason for the rule. Now, although nothing was mentioned about underwriters in the original contract; yet if, before the plaintiffs commenced to manufacture these doors, the defendant company should want to change the contract, or to require something additional in it, they could do so, being subject, of course, to any damages which might accrue to the plaintiffs by reason of an entire failure of the contract or by reason of a change in its terms. Now when the attention of the plaintiffs was called to the underwriters' specifications, it is for you to inquire and say what they should have done. If they were ignorant of the rules of the underwriters' association, ought they not, when their attention was thus specifically called to it, to have made inquiry, either of the defendants to inquire what was meant by that, or to have obtained a copy of the rules in order to ascertain what was

necessary? The plaintiffs, it appeared, had no knowledge of any such association or of any such requirement and therefore they paid no attention to the letter. If they had, they would have had brought to their attention the fact that white pine was required to be inserted in fire doors, and the moment they were notified of that, it is for you to say as to whether their duty would not have been to have notified the defendants that, "Inasmuch as you require white pine, which is higher priced than yellow pine, there must be a change in the terms of our contract." On the contrary, they paid no attention to the letter. It is for you to say as to whether they did or did not fail in their duty in that respect. As they have testified that they know nothing about this association, should they just fold their hands and rely on the contract as it was written, or was it their duty to take the matter up after they received that letter and endeavor to inform themselves as to whether something had been omitted from the contract which the defendants now wanted inserted therein. If, because of their neglect to make that inquiry, this trouble has arisen, it is for you to say whether they or the defendants must suffer the loss.] [3]

Verdict and judgment for plaintiffs for $531.24. Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*N. H. Larzelere*, with him *Franklin L. Wright*, for appellants.—A contract must be held to have been made when the last act necessary to complete it was done: Emerson Co. v. Proctor, 54 Atl. Repr. 849; Perry v. Iron Co., 15 R. I. 380 (5 Atl. Repr. 632); Adams v. Lindsell, 1 Barn. & Ald. 681; Hamilton v. Ins. Co., 5 Pa. 339; Boyd v. Peanut Co., 25 Pa. Superior Ct. 199; Benners v. Clemens, 58 Pa. 24; Brown v. R. R. Co., 83 Pa. 316.

But regardless of the place of contract the terms of the contract show beyond doubt that the doors to be con-

structed were to be delivered at Philadelphia, for a Philadelphia operation, and title was to there pass to the defendants. The place of performance by the understanding of the parties was Philadelphia: Dannemiller v. Kirkpatrick, 201 Pa. 218; Werner Saw Mill Co. v. Ferree, 201 Pa. 405; Boyd v. Peanut Co., 25 Pa. Superior Ct. 199; Lowrey v. Ulmer, 1 Pa. Superior Ct. 425.

If we are right that this contract was not made in Somerset, then the custom as to the material out of which fire doors were to be constructed prevailing where the contract was made and performance by delivery must prevail: Guillon v. Earnshaw, 169 Pa. 463.

*Joseph Levy*, with him *Joseph Knox Fornance* and *Claude L. Roth*, for appellees.—The posting or mailing of appellees' letter of July 26, accepting appellants' offer of July 25, completed the contract from that moment, and made the contract a Somerset contract: Adams v. Lindsell, 1 B. & Ald. 681; Hamilton v. Lycoming Ins. Co., 5 Pa. 339; Boyd v. Peanut Co., 25 Pa. Superior Ct. 199.

It is a well-settled principle of law that the law, and the trade customs which the law recognizes, which govern the performance of a contract, are the law and trade customs of the place of performance of the contract: Guillon v. Earnshaw, 169 Pa. 463; Phœnix Iron Co. v. Samuel, 13 W. N. C. 50; Brown v. Camden, etc., R. R. Co., 33 Pa. 316.

OPINION BY ORLADY, J., July 20, 1910:

The contract between these parties is founded on their correspondence, beginning with a letter from the defendant dated June 12, 1907, at North Wales, Pennsylvania, which was circular in form, addressed to a number of parties, and directed among others to the plaintiff at Somerset, Pennsylvania. The letter opens with the statement, "We need the following list of tin lined doors," and then enumerates a list of sizes and qualities, after which the following information is requested: "Kindly advise what

you count these tin lined doors per square foot, same to be delivered f. o. b., Philadelphia. . . . We prefer having a price per square foot, as the sizes enumerated are not exact, as the building is not up and the openings are not made as yet." To this circular letter the plaintiff replied on June 13, "Can furnish doors as pr. your inquiry f. o. b., Phila., Pa., at 16c. pr. sq. ft." Six weeks later, July 25, the defendant wrote: "We thank you for your proposition of the 13 ult. We would ask that you kindly book our order for the following to be shipped to Philadelphia," giving the details of the doors desired, and concluding "kindly acknowledge receipt of the order."

The first letter of inquiry was not in form or substance an order for goods, and did not bind anyone. It accomplished its purpose in securing the desired information, and the defendant, with the knowledge of the price suggested in the plaintiff's letter of June 13, then gave a definite order for the doors on July 25. The situation was so regarded by the defendant, and the letter of July 25 designated "our order" in the opening and closing sentences. The order was to be booked as of that time and was so regarded by the plaintiff who on the following day, July 26, accepted it by a letter as follows: "We have your order for doors and same will receive our earliest attention. We to-day place order for material for same, as we do not carry that in stock." All doubt on this phase of the case is settled by the defendant's letter of July 31, viz.: "We thank you for your letter of the 26 inst. in which you acknowledge receipt of our order of the 26 inst. Our plan is after the usual construction, and according to the Underwriters' specifications. Kindly acknowledge receipt of this letter, and advise approximately when we can expect shipment."

On August 7 the defendant again wrote: "We have no acknowledgment of our letter of 31st ult. Kindly advise whether you received this letter." To which the plaintiff replied on August 8: "We have your order and letter, and on account of oversight and absence of the

writer failed to answer. We have ordered the material for the doors which we could not get here and will take two weeks at least yet to come in," etc. And on August 21: "The material has arrived and will start your doors on the 22nd, and will rush them through as fast as possible." The goods were shipped from Somerset, Pennsylvania, on August 27, from O. M. Weber Co. consigned to O. M. Weber Co., Philadelphia, with an order on which the freight was paid by the defendant. When they were received by the defendant, and after some of them had been inspected, all were rejected as not having been made of the proper material, and notice was given to the plaintiff that they were held subject to its order.

The principal question is whether the contract was concluded at Philadelphia, where the goods were delivered f. o. b., or at Somerset, where they were manufactured. The trial judge held that the contract was made in Somerset, Pennsylvania, for the reason that the defendant's order of July 25, and the plaintiff's acceptance of July 26, constituted the contract between the parties. The letters f. o. b., Philadelphia, were intended to fix a price beyond which no charge could be made against the vendee either by shipper or carrier, and did not necessarily imply that they were to be delivered at Philadelphia as a consummation of the contract. The freight was paid by the appellant at destination and credit allowed on the prices quoted: Werner Saw-Mill Co. v. Ferree, 201 Pa. 405; Hatch v. Oil Co., 100 U. S. 124. The doors were rejected because they were made of yellow pine instead of white pine, yet white pine was not specified or mentioned in the original order, and they were made strictly in accordance with the terms of the order. The burden of proof was on the defendant to show that white pine was intended and that it should have been so understood by the plaintiff. It was contended that, while there was nothing in the original order to call for white pine, yet in the letter of July 31 which was prior in date to the making of the doors, the attention

of the plaintiff was called to the fact that certain requirements were exacted, viz.: "Our plan is after the usual construction, and are according to the Underwriters' specifications." This it is urged was notice of a custom of trade which determined the character of the product. However, when the letter of July 31 was written, the defendant knew (by plaintiff's letter of July 26) that all of the material for the doors had been ordered. It is well settled that the trade customs which the law recognizes as governing the performance of a contract and controlling in such cases are only the law and trade customs of the place of performance of the contract: Guillon v. Earnshaw, 169 Pa. 463. This contract was both made and performed at Somerset, and if the particular trade custom alleged did not exist there by notorious, universal and well established usage or was actually known by the plaintiff, it would not avail as a defense. The existence of such a custom of trade and all knowledge of it was denied by the plaintiff. This raised a question of fact, which was fully and clearly explained and submitted to the jury both in the general charge and in the eleventh point and its answer. The plaintiff denied that it had any knowledge of any rules issued by an underwriters' association, and that no notice having been given to them of such an association in the original order, they were not bound by the specifications required by such rules. The effect of the lack of inquiry on this matter was so fully and carefully explained to the jury that the defendant has no ground of complaint. The case was tried and submitted with great fairness. We do not find any reversible error in the answers to the eleventh and nineteenth points for charge or in the instruction as to the effect to be given to the underwriters' specifications as a part of the contract.

The judgment is affirmed.