Everedy Machine Company *v.* Hazle Maid Bakers, Appellant.

Argued April 10, 1939.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Frank L. Pinola,* with him *Herman B. Shepard,* for
appellant.

*Irvin J. Kopf,* with him *Richard L. Bigelow,* for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1939:

Defendant, Hazle Maid Bakers, a company engaged in the baking business in Hazleton, (its corporate name having formerly been Power City Baking Company, Inc.) sent to plaintiff, Everedy Machine Company, a corporation in Philadelphia engaged in the manufacture of baking machinery, a written order dated April 30, 1935, the salient portion of which was as follows: "Please ship us one triple deck finishing unit complete with 2-hopper icing machine at $4,865.00, f.o.b. your factory, Philadelphia, with allowance of $615.00 for the return of our old type icing machine delivered to your factory at Philadelphia"; this was followed by specifications of equipment and details of terms of payment. The unit was sixty-eight feet long and comprised two motors, belting and other accessories. On June 27, 1935, plaintiff wired defendant that the machine was completed and ready for shipment, and that defendant should "advise how to ship, motor truck or freight." In a letter of the same date plaintiff wrote: "This equipment is now ready for shipment, which can be made just as soon as you advise us whether you intend to have your truck haul it, or whether we should make shipment by an outside motor truck, or by freight. This unit, upon receiving shipping instructions from you, will be disassembled, depending upon how it is to be shipped. We will complete any crating necessary after you advise us the method of shipping." Defendant did not furnish the instructions requested, but on the contrary wrote a series of letters which in effect amounted to a refusal to accept the machine. Defendant claims that under date of July 2, 1935, it wrote to plaintiff a letter in which it gave as its reason for such refusal the fact that plaintiff used parts of the old type icing machine in building the finishing unit; plaintiff

denies that it received any letter in which such a complaint was made. On July 27, 1935, plaintiff wrote again to defendant for shipping instructions, saying: "If you have no choice in the manner in which it is shipped, advise us if it is satisfactory to send it immediately via motor truck." Defendant replied, under date of July 29, 1935, that it was having labor troubles which had caused a great shrinkage in its production, and intimating that it had no use for the new machine. Under date of October 24, 1935, defendant wrote that, although the labor troubles were settled, "we are just a few steps from going out of the cake business," and concluded by saying: "conditions are such that we certainly cannot ask you to ship this equipment here and then not be able to pay you, because we don't do business in that way." On November 22, 1935, plaintiff wrote a peremptory letter, to which defendant replied, under date of November 26, 1935, that "the cake business with us is simply a thing of the past, and if this equipment were here it would only lay idle, and with financial conditions such as they are now, we would not be able to pay for it." Finally, on April 9, 1936, plaintiff notified defendant: "We are holding this machine as your property," and added that it would bring suit for the contract price. A few weeks later the present action was started. The jury rendered a verdict for plaintiff in the sum of $4,944.17, representing the net contract price of $4,250 with interest.

Defendant has not at any time claimed that the machine as completed by plaintiff was not in accordance with the specifications. Indeed, defendant has never seen it. It attempts to justify the repudiation of its contractual obligation solely on the ground that some of the parts of the old icing machine were incorporated in the new unit. Apart from the fact that the letters above quoted strongly indicate that this was not defendant's real reason, the uncontradicted testimony was to the effect that, in completing the new $4,865 unit, plain-

tiff used only $25 worth of parts from the old machine, that they were of insignificant importance in the construction, that they were in perfect condition and showed no wear, and that their use did not in any way affect the durability or the workability of the new equipment. When one orders a machine from a manufacturer of machinery there is an implied understanding that the machine is to be new and not second-hand or rebuilt, and that sound material and good workmanship are to be furnished, but this rule is not so far-reaching and so inexorable that if a single screw, bolt or handle is not brand new the machine may be rejected even though the condition of the parts thus used is in every respect as good as new and in no way detracts from the appearance, the use or the value of the machine. Plaintiff contends that it was orally agreed by the parties that parts of the old machine could be used, and there would seem to be corroboration of this in the fact that in the letter of June 27, 1935, in which plaintiff announced to defendant that the machine was completed and awaiting shipping instructions, plaintiff stated that it had used the old parts "as agreed"; obviously there was no attempt to conceal such use. But whether so agreed or not, defendant cannot justly seize upon this circumstance—at best de minimis—as a ground for claiming a release from performance.

The only other controversy in the case is as to the measure of damages, defendant insisting that plaintiff was entitled to recover, not the contract price, but only the difference between it and the market price at the time and place of delivery. Under section 63, par. 1, of the Sales Act of May 19, 1915, P. L. 543, the seller may maintain an action for the purchase price if the property in the goods has passed to the buyer. The question arises, therefore, whether title to the machine had passed to defendant at the time it refused acceptance. The wording of the order, "Please ship us one . . . machine at $4,865.00, f. o. b. your factory, Phila-

delphia," is somewhat ambiguous. Defendant maintains that the phrase "f.o.b. your factory, Philadelphia," refers only to the price, and not to the place of delivery,[1] and that, in any event, "f.o.b. your factory" means on cars at the factory.[2] Granting this to be true, it does not conclusively determine the present issue. This transaction did not deal with such ordinary commercial commodities as were the subjects of the sales litigated in *Fairfax Textile Mills v. Feingold*, 273 Pa. 73, and *Clavan v. Herman*, 285 Pa. 120, but involved a large, cumbersome piece of equipment requiring special transportation, and making it at least questionable whether the duty to furnish the necessary cars or trucks was not that of defendant: *Kunkle v. Mitchell*, 56 Pa. 100; *Hocking v. Hamilton*, 158 Pa. 107; see 1 Williston on Sales (2d ed.) 598, 599, sec. 280 a. At least it is a case where, although plaintiff may have had the legal right to select a carrier, the parties could scarcely have intended that defendant was not to be consulted as to the mode of transportation, especially as it might have desired to use trucks of its own to haul the machine from the factory. Indeed, in the case of a cutting machine which it ordered at the same time as the finishing unit, defendant called for it at plaintiff's factory and transported it on its own truck. Notwithstanding a designation "f.o.b." the buyer may sometimes be required to designate the particular carrier before the seller is under an obligation to ship: *Dwight v. Eckert*, 117 Pa. 490, 508.

The time when title passes under a contract of sale is dependent upon the intention of the parties. Con-

---

[1] *Werner Saw Mill Co. v. Ferree*, 201 Pa. 405, 410, 411; *Commonwealth v. Wiloil Corporation*, 316 Pa. 33, 35, 36; *Somerset Door & Column Co. v. O. M. Weber Co.*, 43 Pa. Superior Ct. 290, 295; *Charles E. Hires Co. v. Stromeyer*, 65 Pa. Superior Ct. 241, 243.

[2] 1 Williston on Sales (2d ed.) 598, sec. 280 a; *Richter v. Zoccoli*, 8 N. J. Misc. Rep. 289, 150 A. 1; *State v. Park*, 166 Wis. 386, 165 N. W. 289.

sidering the fact that the machine in the present case was specially manufactured for defendant according to specifications and size determined by the physical capacity and layout of its plant, and that shipping instructions from it would normally have preceded any obligation on the part of plaintiff to load the machine for shipment, and that the method of transportation was evidently contemplated by the parties to be a matter for their subsequent arrangement, a reasonable interpretation of the contract leads to the conclusion that it was the intent of the parties that the title to the machine should pass when the construction was completed and defendant was notified to that effect and requested to signify the mode by which it desired to obtain delivery. That being so, defendant could not change the status of the title by a refusal or failure to give shipping directions, and plaintiff was justified in suing for the contract price.

It may be added that even if title did not pass, plaintiff would be entitled to the same amount of recovery under section 63, par. 3, of the Sales Act, which provides that, "Although the property in the goods has not passed, if they cannot readily be resold for a reasonable price, . . . the seller may offer to deliver the goods to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's, and may maintain an action for the price." Plaintiff notified defendant that it held the machine as defendant's property, and the evidence indicates that the unit was constructed for the peculiar needs of defendant and to conform with the available floor space and columns in its plant, and that, while to some extent it might have been rebuilt so as to adapt it for use elsewhere and could have been lengthened or shortened by adding or eliminating sections, a resale would have been possible only on the remote chance that some other bakery might be

able, and might desire, to use it as built. Under such circumstances section 63, par. 3, of the Sales Act applies: *Weintrob's Estate*, 295 Pa. 374, 377, 378. It is true that defendant was not permitted to have certain witnesses who were called by it testify that the machine could have been resold, but this testimony was rejected, not because it was irrelevant, but because the witnesses had apparently no such qualifications or experience as would have justified their expressing an opinion on that subject. In any event, the question of salability is unimportant in view of the conclusion reached in regard to the passage of the title.

The judgment is affirmed.