## Sisemore & Kierbow Company, Inc., to use, *v.* Nicholas, Appellant.

Argued March 12, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and KENWORTHEY, JJ.

*Francis John Gafford,* with him *William H. Schneller,* for appellant.

*Benjamin Nieman,* with him *James C. Lanshe* and *Henry B. Friedman,* for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

Judgment for $1529.56, plus interest and 15% collection fees, was entered by confession on March 20, 1939 in favor of "Sisemore & Kierbow Co., Inc., now to the use of The Bastian-Blessing Company", against L. F. Nicholas, on a judgment exemption note for that amount. The note was dated June 22, 1938, and was payable in monthly instalments of $42.50 each on the 25th day of each month, beginning August 25, 1938, until *July 25, 1941,* when a last payment of $42.06 was due; "with interest at 6% per annum on unpaid balance from maturity until paid". It contained a clause providing that upon non-payment of any instalment at its maturity, the remaining instalments, at the option of the holder, should become immediately due and payable, and confession of judgment was authorized for such amount *as might appear to be unpaid.*

The note, signed by L. F. Nicholas, this defendant, was made payable to the order of Sisemore & Kierbow Co., Inc., and by it endorsed "to the order of The Bastian-Blessing Co., Chicago, Ill." It contained a full printed page of conditions, not here material.

After a writ of fi. fa. had been issued, the judgment was opened on the petition of the defendant, and an issue awarded—the plaintiff in said issue to be "Sisemore & Kierbow Co., Inc., now to the use of The Bastian-Blessing Co.," and the defendant to be L. F. Nicholas—to determine "what, if any, amount is the *use-plaintiff* entitled to."

On the trial of this issue, the court directed a verdict for the *plaintiff* for $1734.52. A new trial was refused and judgment was entered for the *plaintiff* on the verdict. The defendant appealed.

The judgment will be reversed and a new trial awarded.

The evidence in the record shows that on the same day the note was given, Sisemore & Kierbow Co., Inc., a Pennsylvania corporation having its principal office in Philadelphia, (hereinafter called Sisemore), acting as 'Distributor' or sales agent for certain products manufactured by the Bastian-Blessing Company, (hereinafter called Bastian), procured an order from L. F. Nicholas for the purchase on a conditional sale contract of certain ice cream freezing equipment for the price of $1758.31, which included interest in the amount of $233.31. The order recited that the buyer had given his check for $228.75 as a down payment, and had executed and delivered the judgment note in suit. This conditional sales contract contained the same provisions as to payment as the note in suit, and provided for the retention of title in Sisemore "until the purchase price, or any notes or renewal or judgment for same shall be paid in full." It was *accepted* by *Sisemore* on June 23, 1938.

The same day the contract was accepted by Sisemore, it executed a form of assignment *printed* on the back of the Conditional Sale Contract, selling, assigning, etc., the said contract and all right, title and interest in and to the property therein described, to The Bastian-Blessing Company of Chicago. This assignment is printed in the margin.[1] The words printed in italics

---

[1]    "This Assignment Must Be Signed By Seller
"Contract of *L. F. Nicholas*     *R. F. D. 1 Walnutport*
         Name               Address
         *Walnutport*           *Pa.*
         City                State
"For $1.00 and other good and valuable consideration, the

were inserted in the printed form. The black letter portion was not emphasized in the original.

In its letter[2] of June 23, 1938 to Bastian enclosing Nicholas' order and conditional sale contract, Sisemore wrote, *inter alia:* "This order is for $1525, 228.75 with this order, the balance in 36 months, *interest included in this contract is $233.31,* making the total amount $1758.31. The above owns his farm, also has two ice cream trucks with which he delivers ice cream, and we feel sure that you will find his credit to be okay. We

---

receipt whereof is hereby acknowledged, the undersigned hereby sells, assigns, transfers and sets over to The Bastian-Blessing Company of Chicago, Illinois, its successors and assigns, the annexed above named contract and/or mortgage, and all right, title and interest in and to the property therein described, and all rights and remedies under said contract and/or mortgage, including the right to collect all installments due thereon and grants authority either in assignee's own behalf or in undersign's name to take all such legal proceedings or otherwise as undersigned might have taken save for this assignment. **The undersigned warrants** that the contract and/or mortgage and accompanying note are genuine and the only contract and/or mortgage and note, executed for the equipment therein described, that all statements contained therein are true and **that the equipment has been delivered and accepted.** The undersigned shall have no authority, without assignee's prior written consent, to accept collections and/or repossess and/or consent to the return of the equipment and/or modify the terms of the said contract and/or mortgage and note.
Dated *June 23, 1938.*

*Sisemore & Kierbow Co., Inc.,*
By *F. H. Kierbow,*
Signature of Seller.
*S. E. Cor. 17th & Fairmount Ave.*
Address of Seller"

[2] Sisemore's letter-heads set forth that they were "Factory Distributors for Russ Soda Fountain Company". Bastian became the successor in business of Russ Soda Fountain Company, (91a), and as such, in 1938 and 1939 (67a), *manufactured* the Russ Ice Cream Freezer—which was what the appellant bought. During those years, Russ Soda Fountain Company was only a trade name for Bastian.

are enclosing landlord's waiver, summary, note, copy of Dun & Bradstreet inquiry. The above wishes delivery on Thursday of this coming week, so it will be necessary that this freezer be shipped on Monday. According to the card we received from the factory [that is, Bastian's factory], *the freezer that was to be shipped to our show-room can be used on this order.* We would appreciate if you would rush all possible in getting us good delivery." [In pencil] : "As soon as the above's [appellant's] check clears our bank, we will forward you the down payment, but do not let this hold up *acceptance on this order,* as we will wire you as soon as the check is clear" (italics supplied).

Pursuant to this, after Bastian had learned from Sisemore that Nicholas' check for the down payment was good, and after the receipt on July 1, 1938 of the down payment from Sisemore, Bastian, on July 15, 1938, shipped from its factory in Grand Haven, Michigan, direct to *Nicholas* the ice cream equipment referred to in the letter; and on *August 11, 1938* notified Nicholas that the note and contract had been assigned to it.

Immediately thereafter Nicholas complained to Bastian, by letter dated August 18, 1938—received by it the next day—that the equipment, which had been installed by Sisemore on July 20, did not work. On October 11, 1938, Bastian wrote to the appellant that their District Manager had recently called in company with Mr. Kierbow, president of Sisemore, and looked over the ice cream freezing equipment, and had made a report to Bastian, and that the latter was demanding full payment of the balance of the appellant's contract (126a). By letter of November 9, 1938, Bastian wrote to the appellant, admitting that the equipment purchased by him was guaranteed by Bastian-Blessing Co., as *manufacturers,* for a period of twelve months from the date of shipment from their factory, against defects in material and workmanship, *but stating the guarantee*

*was made only to Sisemore & Kierbow Co., Inc."* (127a-128a—Italics supplied).

We have gone into the facts this fully because, in connection with other matters hereafter referred to, they tend, in our opinion, to support the contention of the appellant that the relation between Bastian and Sisemore, in the sale of this equipment, was not one of simple seller and buyer, but justified the inference that in making this sale Sisemore was acting as the agent of Bastian rather than as the owner of the equipment covered by the contract, and that the elaborate 'Distributor Franchise Agreement' (77a-97a)—also called 'Sales Agreement'—with its 'riders' was contrived with the purpose and intent of retaining in Bastian full control over sales made for it by the 'distributor' (Sisemore), but, at the same time, of escaping liability for defects and imperfections in the equipment sold. Of course, it makes no difference what the agreement called the selling agent, if such a sales agency was actually created and Bastian retained control over the sales made by Sisemore. The law looks through the form to the substance.

It will be noted at the outset that the judgment was not entered in favor of the *holder* of the judgment note, but in favor of the *payee, to the use of the holder;* and the issue was awarded in the same form—the plaintiff was Sisemore to the use of Bastian, and the question to be determined was, "what, if any, amount is the *use-plaintiff* entitled to."

Furthermore, the docket entries show no affidavit or averment of default warranting the entry of judgment before the maturity of the note on July 25, 1941. The accelerated maturity (see *Home Credit Co. v. Preston,* 99 Pa. Superior Ct. 457) could take place only on default in payment of an instalment at its maturity, and an averment or affidavit of default was necessary to accelerate the maturity fixed in the note, and determine the amount unpaid at the time of default.

In all the cases relied on by the appellee the holder of the note either sued in his own name, as a holder in due course, or entered up judgment by warrant of attorney, in his own name, as plaintiff, after maturity of the note; and in case of an accelerated maturity averred the default justifying the acceleration.

Let us now examine some of the circumstances attending the transaction:

1. Bastian was the manufacturer of the equipment, although its name did not appear as such manufacturer.

2. The equipment could be sold by Sisemore only on contract forms prepared and furnished by Bastian, which required the assignment of the contract to Bastian.

3. All moneys—down payment as well as notes— were delivered to Bastian, who kept the account with Sisemore and remitted it such sums as *Bastian* deemed Sisemore was entitled to, after deducting a reserve to be held by Bastian in 'Distributor's Reserve Account' until the contract was completed and the money paid.

4. Products for *display purposes* might at Bastian's option be *consigned,* instead of *sold,* to the distributor. Title to such equipment remained in Bastian until a regular order was *received* and *accepted by Bastian.* Delivery must not be made until authorized by Bastian. The letter from Sisemore to Bastian of June 23, 1938, supra, shows that the equipment sold this appellant was to have been shipped to Sisemore's *'show-room'* and the order had to be accepted by Bastian, (as well as by Sisemore), before it became effective and the equipment could be shipped.

5. As to equipment sold by Sisemore, the form of the assignment prepared by Bastian required that it set forth that the "Equipment has been delivered and accepted". When Bastian accepted this appellant's order, it knew this was not true, for *it* shipped the

equipment direct to Nicholas and did not ship it until July 15, 1938, nearly a month after the date of the assignment to Bastian.

6. Contracts were accepted by Bastian not on the strength of Sisemore's financial standing, but on that of the purchaser.

7. Delivery was made, not to Sisemore, but to appellant direct, and not until nearly a month after the date of the order.

8. If the equipment delivered to appellant was second-hand, [See *Everedy Machine Co. v. Hazle Maid Bakers,* 334 Pa. 553, 557, 6 A. 2d 505] [3] Bastian knew it. The letter of June 23, 1938 above referred to, shows it was not manufactured to appellant's order.

9. The contract between Bastian and Sisemore referred, in at least one place (p. 89a), to Distributor's *'commission';* and in another (81a), to *"Compensation of Distributors".* It provided that "Distributor agrees during the life of this Agreement not to sell or offer for sale any make of article competitive to that manufactured by Company" [Bastian].

10. Under said contract, Bastian was authorized to endorse Sisemore's name on checks and other writings received by way of payment for products sold by Sisemore.

11. Sisemore appointed Bastian's treasurer its agent for this purpose.

12. The title of Bastian to said products sold by Sisemore was at all times to be superior to any right, title or lien of Sisemore.

While failure of consideration is not a good defense to negotiable paper in the hands of an indorsee who is

---

[3] "When one orders a machine from a manufacturer of machinery there is an implied understanding that the machine is to be new and not second-hand or rebuilt, and that sound material and good workmanship are to be furnished": *Everedy Machine Co. v. Hazle Maid Bakers,* supra, p. 557 (STERN, J.).

a holder in due course, the rule is otherwise between maker and payee. "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable": Sec. 58 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, 56 PS §138; *Holland Furnace Co. v. Gabriel,* 102 Pa. Superior Ct. 578, 157 A. 373; *Bucks Co. Trust Co. v. Fell,* 104 Pa. Superior Ct. 277, 279, 159 A. 65. And if the indorsee holder is only the principal of the payee, for whom and on whose account the payee was acting in the transaction, the holder is not the 'holder in due course' as respects defenses which the maker may have against the payee as to the transaction which furnished the consideration for the note. See *Enterprise Mfg. Co. v. Moore,* 101 Pa. Superior Ct. 563, 567.

For example, if the contract of sale in this case had been made in the name of Russ Soda Fountain Company, and the contract had been assigned and the note endorsed to Bastian, no one would contend that a failure of consideration good as a defense against the seller, Russ Soda Fountain Company, would not likewise be good against Bastian, upon showing that Russ Soda Fountain Company was only a trade name of Bastian. See note 2 above.

So, also, if this elaborate sales contract between Bastian and its distributors—including Sisemore—was designed to give Bastian all the powers and authority of a seller of merchandise and equipment without any of the liabilities and responsibilities imposed by law on the seller, or consequent upon a sale, the law will look through the veil which was contrived to conceal the transaction and place the responsibility where it belongs.

In all of the cases relied on by the appellee, the plaintiff was, at least to all appearances, an innocent holder in due course, who was not concerned in the

manufacture or sale of the article, equipment or apparatus, sold by the payee of the note to the maker, and who, without knowledge of any defects of construction or installation or want of sound material or good workmanship in its manufacture, or notice that it was second-hand or had been rebuilt, had bought the note and sales contract from the manufacturer, the payee, and therefore took title to the note free of any defenses that the maker of the note had against the payee growing out of the transaction. Our recent case of *First National Bank of Portland v. Hartman Co.*, 147 Pa. Superior Ct. 396, 24 A. 2d 582, is a good example. It went to the extreme limit in holding the maker of the note liable to the bank which purchased the note and the accompanying sales contract from the manufacturer of the machine or equipment. We said in that case, speaking through Judge KENWORTHEY: "The note was originally given for the purchase price of certain machinery, under a written conditional sale contract, which contract was on the bank's form; the note was also on the bank's form; and the contract, which was offered in evidence by defendant, contained a provision that the 'seller may assign this contract to the First National Bank of Portland, Oregon'. The argument is that these facts indicated the bank was involved in the original deal and, therefore, charged with notice of any default on the part of the payee. This court, in *International Finance Co. v. Magilansky et ux.*, 105 Pa. Superior Ct. 309-311, 161 A. 613, 614, dealt with a similar argument in the following language: 'Granting, arguendo, that the indorsee of the note knew that the payee was in the business of installing furnaces, and that it took notes of the same character as the one in suit in its various transactions, this knowledge did not charge him with notice of the infirmity of this particular note. *There is an entire absence of proof* (in fact, there is testimony to the contrary) *that the in-*

*dorsee at the time the note was negotiated had any-thing to do with the payee company, had any interest in the concern, or had any intimate knowledge of its transactions'.* See, also, *Detroit Savings Bank v. Towers,* 42 Pa. Superior Ct. 246."(Italics supplied).

But those cases cannot be applied to a case like this, where the purchaser of the note was the manufacturer of the machine or equipment sold and thus knew all about its defects of construction and its second-hand or rebuilt quality, and the jury could find that the distributor's contract was designed for the purpose of concealing the true relation of the parties and to relieve the manufacturer of responsibility for those defects, etc., for which it would be liable if it sold the article as manufacturer instead of through a so-called distributor, who was in fact only its agent in effecting a sale. It is implicit from the above quotation that if the plaintiffs in those cases had been the manufacturers of the apparatus involved in the transaction, with full knowledge of its defects or had been the principals of the sellers (the payees of the note), with "intimate knowledge" of the transactions, they would not have been held to be holders in due course of the notes. See also *Bucks County Trust Co. v. Fell,* supra, p. 280.

Taking into consideration the evidence admitted in the case in connection with the defendant's offers to prove the defective character of the ice cream freezer apparatus, its second-hand or rebuilt character, the defective installation of the equipment and the impossibility to make it work, all of which was rejected in the court below on the theory that the "use-plaintiff" was a holder in due course and therefore not liable or responsible for such defects, but which in the circumstances here present should have been received, there was ample evidence from which the jury could find that the use-plaintiff was not only the manufacturer of the equipment but also was the actual seller of it in the

transaction with the defendant, and was not a holder in due course of the note in suit, and was responsible for the failure of consideration which the defendant offered and attempted to prove.

In our opinion the learned court below erred in departing from its earlier position in opening the judgment.

The assignments of error are sustained. The judgment is reversed and a new trial awarded.