Philadelphia, Trustee, *v.* N. Snellenburg & Co.,
Inc., Appellant.

Argued October 1, 1948. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

508

*Thomas Raeburn White,* with him *William H. Peace, 2nd, Ira Jewell Williams,* and *White, Williams & Scott,* for appellant.

*Joseph P. Gaffney,* for appellee.

OPINION BY RHODES, P. J., January 14, 1949:

This was an action in assumpsit brought by the City of Philadelphia, trustee under the will of Stephen Girard, deceased, acting by the Board of Directors of City Trusts, against N. Snellenburg & Company, Inc., to recover sewer rental for the year 1946, which was imposed upon plaintiff as the owner of premises leased to defendant.

The case was tried by a judge without a jury under section 12 of the Act of July 12, 1913, P. L. 711, as amended by the Act of June 20, 1919, P. L. 515, 17 PS § 695. The trial judge found for plaintiff. Defendant's motions for a new trial and for judgment n. o. v. were overruled; defendant appealed from the judgment entered in favor of plaintiff, and assigns for error the refusal of its motion for judgment n. o. v.

The question in the case is whether appellant, as lessee under a lease of April 18, 1942, is liable to pay, as part of the rental of the leased premises, the sewer rental imposed by the City of Philadelphia. Appellee contends that the charge is a part of the minimum annual rental stipulated to be paid by appellant under the terms of said lease.

There is no dispute as to the facts. The lease in question was entered into on April 18, 1942, and covers the premises at Twelfth and Market Streets, Philadelphia, Pennsylvania, occupied by appellant for many years as a department store. This 1942 lease also includes a store fronting on Chestnut Street, which had not been included in previous leases between substantially the same parties. The term of the lease is sixteen years, from February 1, 1942, and it provides for a minimum annual rental of $580,000 plus a certain percentage of the gross business

done by appellant-lessee in excess of $17,000,000 per lease year. The lease further provides that: ". . . the said minimum rental of $580,000.00 is to be adjusted as follows: (a) To be increased or decreased as the total sum of (1) City and School taxes and any other taxes or charges of like nature which may be imposed on [the] premises . . . during the term of this lease, (2) Fire insurance premiums necessary to insure the buildings [in certain amounts] . . . (3) Annual Minimum Water Service Charge for said . . . premises . . . is increased or decreased as compared with the total sum of like charge for the year 1941 agreed to be as follows: City and School Taxes, $222,803.88; Fire Insurance Premiums, $1,285.60; Minimum Water Service Charge, $3,870.00; Total, $227,959.48."

The record contains the following circumstances bearing upon appellant's possible liability for sewer rentals under the 1942 lease. This lease superseded two prior leases, dated May 18, 1929, between the same parties or their predecessors. They were entered into by appellee with N. Snellenburg & Company, then a partnership, as lessees, but on January 14, 1938, during the terms thereof, the leases were assigned to appellant. These 1929 leases were introduced in evidence over appellant's objection. Each lease was for a term of twenty-one years from January 1, 1937; other unexpired leases were in effect in the meantime. It is clear from the record that one of the reasons for entering into the new 1942 lease before the expiration of the 1929 leases was the inclusion of a Chestnut Street store in the leased premises. One of the 1929 leases, known as the Market Street lease, covered the property bounded by Eleventh, Twelfth, Market, and Girard Streets, in the City of Philadelphia. The other lease covered a piece of ground, with a building thereon erected, bounded by Girard, Eleventh, and Clover Streets, and lot upon which is erected the Stephen Girard building. Under the 1929 leases, appellant, as lessee, was obligated to pay an annual net rental fixed according to

a certain formula defined therein, plus a further sum "equal to the yearly City taxes and water rents which may be assessed or charged against the demised premises each year."

The present differences between the parties are the result of a change in the manner in which the City of Philadelphia has financed its sewer system. Prior to and during the existence of the 1929 leases between the parties, the total cost of maintaining the sewer system of the City of Philadelphia was paid out of general taxes assessed and levied by the City. Acting under the authority conferred by the Act of May 14, 1937, P. L. 630, 53 PS § 1030 et seq., the City of Philadelphia, by an ordinance dated August 1, 1940, imposed a sewer rental at a rate equal to 40 cents for each $100 of assessed valuation. In *Hamilton's Appeal (In re Petition of City of Philadelphia)*, 340 Pa. 17, 16 A. 2d 32, the Supreme Court held that the 1940 ordinance imposed a tax and not a charge for the use of sewers, and that it was not in compliance with the enabling Act of 1937. A second ordinance, enacted in 1941, was declared invalid for the same reasons in *Philadelphia's Petition (In re City of Philadelphia)*, 343 Pa. 47, 21 A. 2d 876. A third ordinance, passed April 20, 1944, was upheld by the Supreme Court in *Gericke v. Philadelphia*, 353 Pa. 60, 44 A. 2d 233.

The sewer rental or charge for the year 1946 was imposed by the ordinance of April 20, 1944. That ordinance provides that: "The sewer rental hereby imposed shall be an annual charge based upon the water consumption of the properties served as measured by the charges for water supplied for the then current calendar year . . . [at specified] percentages of the charges for water computed at rates established [by an ordinance of 1916]." Section 8 of the 1944 ordinance provides that the sewer rental shall be due and payable at the same time that the water rents are due and payable and shall be included in the same bills. Section 10 of the ordinance charges

the Receiver of Taxes with the duty of collecting all sewer rents. Section 11 provides for the collection of delinquent sewer rentals, including the entry of liens.

In the course of the negotiations leading up to the execution of the 1942 lease, the president of appellant wrote a letter, dated April 28, 1941, to the then chairman of the Board of Directors of City Trusts. In this letter it was proposed that there "should be a minimum rental of $560,000 for the stores now occupied by N. Snellenburg & Company, and $20,000 for the store proposed to be opened fronting on Chestnut Street," and further "that the rental should be calculated on the basis of 3½% on all net sales up to $16,000,000 and 4% thereafter, and that *the tenant should pay all increases in taxes, water rents, insurance or other Governmental charges assessed against the presently occupied properties,* Snellenburg's to have the benefit of any reduction of these charges hereafter made." (Italics supplied.)

In construing any writing, the object is to ascertain the intention of the parties as gathered from the language used, taking into account the circumstances under which it was made. *Rigby v. Great Atlantic & Pacific Tea Co.,* 139 Pa. Superior Ct. 543, 547, 13 A. 2d 89; *Central-Penn National Bank v. Firestone Tire & Rubber Co.,* 154 Pa. Superior Ct. 70, 72, 35 A. 2d 794; *Philadelphia Saving Fund Society v. Lehigh Coal & Navigation Co.,* 163 Pa. Superior Ct. 106, 109, 60 A. 2d 580; *Hindman v. Farren,* 353 Pa. 33, 35, 44 A. 2d 241.

Applying the accepted principles of interpretation, it is impossible to escape the conclusion that the parties intended that appellant should be liable for the sewer rental here in question. In construing any agreement we must also look through the form to the substance. *Sisemore & Kierbow Co., Inc., v. Nicholas,* 149 Pa. Superior Ct. 376, 382, 27 A. 2d 473. As a matter of substance, these charges had been paid by appellant under prior leases, and under the present 1942 lease, in the form of general taxes. By setting up an independent self-sus-

taining sewer budget and basing the charges on the more equitable basis of the probable use made of the sewers, the City did not change the essential nature of the charge which was formerly included in general taxes. Admittedly, the premises leased were served by the same sewers from 1929 to 1946 and prior thereto. In the light of these circumstances, we are of the opinion that the sewer rental for 1946 was embraced within the meaning of the term "City and School taxes and any other taxes or charges of like nature which may be imposed on [the] premises. . . ." That which had been a tax collected by the City became a more equitable substitute for the tax, and was, for the purposes of this lease, a charge of like nature, which took the place of the tax in the City's financial structure.

Under prior leases, as well as under the 1942 lease, the parties themselves interpreted their agreements so as to make appellant liable for what was in substance the disputed item. Unless contrary to the plain meaning of the contract, an interpretation given by the parties themselves will be favored. *Monongahela Street Railway Co. v. Philadelphia Company*, 350 Pa. 603, 618, 39 A. 2d 909.

Evidence as to leases and negotiations between the parties prior to 1942 was admitted subject to objection by appellant's counsel. The court below may have considered to some extent these prior leases and negotiations in rendering its decision. Appellant has not, on appeal, questioned the admission or consideration of such evidence. The phrase "taxes or charges of like nature" was sufficiently ambiguous to warrant consideration of such evidence in order to arrive at the true intent of the parties. The evidence as to extrinsic circumstances, including prior dealings, did not violate the rule as to the interpretation of integrated agreements, or the rule forbidding the introduction of parol evidence to vary the terms of a written agreement. Restatement, Contracts, § 238 (a) ; *Hollander v. Friedman*, 360 Pa. 20, 23, 59 A. 2d 892. Notwithstanding prior leases and prior negotia-

tions, it appears from the record that the City formerly financed its sewers out of general taxes. This is the essential fact which demonstrates the substantive similarity between the tax and the present charge, and which makes it plain that the parties intended appellant to pay the item under the 1942 lease.

Our conclusion as to the appellant's liability for sewer rentals is confirmed by a reading of the 1942 lease in its entirety. Under its provisions appellant is made liable for all the usual maintenance charges connected with the type of leased property. To exclude sewer rent, under the circumstances, would be to ignore the purpose and language of the lease. There is no canon against using common sense in construing a contract, so that a strained construction does not defeat its intent and purpose. See *Roschen v. Ward,* 279 U. S. 337, 339, 49 S. Ct. 336, 73 L. Ed. 722, 728.

Judgment of the court below is affirmed.