## Girard Trust Corn Exchange Bank, Trustee, v. Ermilio, etc.

*W. Horace Hepburn, Jr.*, for plaintiff.
*John W. Dawson, Jr.*, for defendant.

GILBERT, J., September 24, 1954.—Plaintiff sues to recover from defendant the sum of $634, with interest, the amount of excess water rent assessed against premises 1613 Walnut Street, Philadelphia, consumed during the period from March 15, 1949, to September 1952, or about $180 per year.

Preliminary objections to the first complaint were filed by defendant, which (after answer filed) were sustained with leave to plaintiff to file an amended complaint. Thereafter, defendant filed preliminary objections also to the amended complaint, together with defendant's motion for judgment on the pleadings, or the alternative motion to strike off or dismiss

the amended complaint. These came before this court for disposition on July 15, 1954.

Under date of February 10, 1949, the parties entered into a lease for the term of five years, beginning March 15, 1949, of the two-story and basement building, located at 1613 Walnut Street, Philadelphia, at a rental of $10,000 per annum.

The written lease-agreement entered into between the parties is comprised of four large pages, closely printed, with many of its printed provisions stricken out, and contains many typewritten interlineations and additions, together with a rider comprised of two typewritten pages of additional provisions attached thereto.

All of these copious changes in the original printed form, made before the execution of the agreement, indicate considerable negotiations and discussion between the parties, from which emerged the final terms and provisions of this lease.

It will be noted that section 5 of the lease as originally printed specified four different items of additional rent to be paid by the lessee. The first and third items (sections 5 and 5(b)) were allowed to remain, and hence require the lessee at bar to pay as additional rent (1) any damages resulting from breach of the lease, and (2) all increases in fire insurance premiums caused by act or omission of the lessee or by the nature of his business.

The second and fourth items (5(a) and 5(c)) were both deleted, thereby relieving the lessee from payment as additional rent of (1) taxes, and (2) "all water and sewer rent assessed against the demised premises." Nowhere else does the lease mention the latter subject. The agreement of the parties, therefore, as revealed by the lease, is silent on the question of liability for water and sewer rents.

All of this suggests the considered intention of the parties to relieve the tenant from the payment of the water rent here in suit. It is noted also that section 7 permitted the tenant to use the premises for the purposes of his tailoring business "and other commercial or professional uses."

Section 33 provided that no parol change in the lease should be binding; section 35 required plaintiff to install toilet rooms and additional plumbing fixtures (which contemplated the use of additional water); section 37 allowed the tenant to sublet portions of the premises, and section 42 authorized defendant "to install trade fixtures and to decorate or make interior alterations or installations." The fact that such installations et cetera were to be at the lessee's "own cost and expense" was not referred to at the argument or in the briefs submitted. Hence, we assume the parties agreed that the "cost and expense" referred to apply only to the original installation, and not to expense incident to its operation thereafter.

Tenant-defendant entered into possession and installed two air-conditioning units, which plaintiff avers was done without its knowledge or consent. It is admitted that the excess use of water here in issue was due to the operation of these units.

Plaintiff grounds its claim upon the premise that a tenant is primarily liable for the payment of water rents, for he is the occupier of the premises and the user of the water; that, since plaintiff was obliged to pay these rents for the reason that the City of Philadelphia assessed them *against the premises*, plaintiff is, therefore, subrogated to the right of the city to proceed against the tenant for payment. This position assumes, of course, that the city may proceed primarily against the tenant for collection.

In order for plaintiff to maintain this action, he must establish liability on the part of the tenant either

(1) as a matter of agreement between landlord and tenant, or (2) by operation of law.

The amended complaint, as did also the original complaint, avers that "by reason of the use of said excess water by the defendant, the Water Bureau of the City of Philadelphia *assessed against the said premises* an excess water and sewer bill" in the amount stated. (Italics supplied.)

The inference to be drawn from the above italicized language is clear; namely, that the City of Philadelphia regarded the premises as the primary liability for the water and sewer rent.

Nowhere in the complaint, or amended complaint, does plaintiff aver that defendant expressly or impliedly agreed to pay these rents, but contends that since the amount of water to be used was solely within the control of defendant, his excess use thereof raises an implied promise to pay for same.

Plaintiff in its brief argued that

"The clause of the printed form used by the parties relative to water rents provided for payment of all water and sewer rents by the tenant. It was deleted by the parties because they did not intend to place the burden of paying the basic water rent upon the tenant. But by so doing the parties did not relieve the tenant from his obligation to pay for the excess water consumed by him."

But the intention of the parties is to be gathered from their written lease. The word "all" certainly means what it implies, namely, "all". It is not clear by what logic plaintiff can separate the meaning of the word into two parts, one meaning "basic" and the other "excess" water rents, and say that the intention of the parties was to relieve defendant from the one and not the other, or from one part of "all water rents" and not the other part of "all water rents". We think that "all" means "all", and that the parties by delet-

ing the clause in question intended to relieve the tenant from the payment of all water rents.

In construing any writing, the object is to ascertain the intention of the parties as gathered from the language used, taking into account the circumstances under which it was made: Phila. v. N. Snellenburg & Co., 163 Pa. Superior Ct. 507, 511 (1949), and cases therein cited. In construing any agreement, "the law looks through the form to the substance": Sisemore & Kierbow Company, Inc., to use, v. Nicholas, 149 Pa. Superior Ct. 376, 382 (1942).

There is no canon against using common sense in construing a contract, so that a strained construction does not defeat its intent and purpose: Phila. v. N. Snellenburg & Co., supra, p. 513.

It is clear, therefore, that liability on the part of the tenant cannot be founded upon any agreement between the parties. If plaintiff can recover at all in this action, it must be by operation of law.

On the question as to defendant's primary liability for water rents, plaintiff's position is not supported by authority.

The Act of May 16, 1923, P. L. 207, provides the means for collection. Section 4 ordains that "the lien for water rates . . . or sewer rates . . . shall exist in favor of, and the claim therefor may be filed against the property thereby benefited by, the municipality extending the benefit."

Section 23 provides that "all judgments for the plaintiff, whether on the original scire facias or any scire facias to revive, shall be *de terris* only, and shall be recovered out of the property bound by lien, *and not otherwise*." (Italics supplied.)

To same effect is the Act of May 28, 1915, P. L. 599, sec. 2.

In Borough of Oakdale v. Knepper, 96 Pa. Superior Ct. 517, 520, 521 (1929), the court recognized the

primary liability of the owner for payment of water rents, stating that:

"The refusal to furnish water probably would have endangered the health of not only the family living in the house deprived of water, but the neighborhood as well. The public has an interest in a matter of this nature. Every protection should be afforded to the health of the people living in a community where sanitary precautions are necessary. Opportunities are afforded to the residents in municipalities to have necessities, as water, sewage, light, to promote their comfort and convenience and the law recognizes the right of the municipalities to be protected from financial loss for the service rendered."

In this case the owner was a husband, who was under court order to provide for his wife and children, and who had the borough shut off the water from his property in which they were living, the property later being supplied with water service on the sole application of the wife.

"Water rents are not taxes," said the Superior Court (Keller, J.) in Roma E. Provincia Building & Loan Assn. v. Penza, 115 Pa. Superior Ct. 201, 204 (1934), "and are not recoverable by the purchaser at sheriff's sale from the owner not in occupancy of the premises; for the City of Philadelphia has no right to bring an action of assumpsit, to which the purchaser can be subrogated, against such owner, for water rents or water rates. The city's rights against such owner are limited to filing a municipal claim against the premises, a lien in rem."

Provident Trust Co. v. Judicial B. & L. Assn. et al., 112 Pa. Superior Ct. 352 (1934), was an action in assumpsit brought by a mortgagee of real estate who purchased the same at foreclosure sale, and sued, inter alia, for reimbursement for water rents mortgagee was obliged to pay from the owner of the real estate

when the water rents were due.. The entry of judgment for plaintiff by the court below was held to be error.

"We have held," said the Superior Court, by Judge Keller, "that in the absence of a statute imposing upon owners of real estate a personal liability for water rents or water rates, while the property is in possession of their tenants, there is none. . . It does not appear in this case that municipal liens or claims were filed for these water rates. But, even if they were, authority to file such a lien or claim against real estate does not impose personal liability on the owner. . . A municipal lien or claim against real estate is a proceeding in rem, not in personam. The judgment under it binds only the res. . . The city having no right of personal action against an owner of real estate for water rents or water rates on property in the possession of a tenant, there was none to which the plaintiff as mortgagee purchasing under the mortgage foreclosure could be subrogated." And see Securities Guaranty Corp. v. Pacheto Co., Inc., 112 Pa. Superior Ct. 360, 364 (1934).

The city ordinance of April 20, 1944, page 71, in section 1, "imposed an annual sewer rental or charge for the use of the sewers, sewage system and sewage treatment works of the City of Philadelphia upon the *owners* of properties served thereby," based upon certain therein enumerated "percentages of the charges for water computed at the rates established by, or fixed in accordance with, the provisions of the ordinance approved December 2, 1916".

Section 8 provided that:

"All sewer rentals shall be due and payable at the same time that water rentals are now due and payable. They shall be included in the same bills and shall be collected at the same times and in the same manner

and be subject to the same penalties as the charges for water."

To the same effect is City of Philadelphia, Trustee, v. N. Snellenburg & Company, Inc., 61 D. & C. 403, affirmed in 163 Pa. Superior Ct. 507, supra, where the trial judge (Jones, J.) said, page 412:

"The primary liability for these charges [including sewer rent] is that of the owner-lessor."

Also see City of Phila. v. Powell et al., C. P. No. 3, September term, 1949, no. 2413, and Henry v. Itzkovitz, 23 Municipal Law Reports 106 (C. P. No. 5, Phila.), Smith, J.

As long ago as 1885 the Supreme Court held that a "municipal lien does not purport to be for the debt of the defendant; it is a proceeding against the property for the debt of the property; it involves no personal obligation whatever; the proceeding for its enforcement is purely *in rem;* it is a specific property lien, and when that lien is lost against the property it is a lien against nothing, whilst it is for the personal debt of no one": Haddington Methodist Episcopal Church v. City of Philadelphia, to use, 108 Pa. 466, 472.

And while in Provident Trust Co. v. Judicial B. & L. Assn. et al., supra, the court held that the statute there involved did not apply to water rents, the foregoing principle of primary liability of the res or the owner was recognized. That case involved the Act of April 17, 1929, P. L. 527, which provided that "in addition to the remedies provided by law for the filing of liens for the collection of municipal claims, all cities, boroughs, incorporated towns, and first class townships may proceed for the recovery and collection of municipal claims by action of assumpsit against the person or persons who were the *owner or owners* of the property at the time of the completion of the improvement."

We have found no statute, nor has our attention been called to any law, which permits an action of assumpsit to be brought against a tenant for the collection of water rents or other municipal claims.

Nor do we know of any authority, and have been referred to none, which holds the tenant primarily liable for payment of water rents, basic or excess. As seen from the foregoing citations, wherever the law deals with the subject, the owner of the property is named as primarily liable. Hence, in the case at bar, it is clear the city had no right of action in personam against the tenant. That being so, there was no right of the city to which the landlord could be subrogated.

Plaintiff paid the excess water rent, not as a volunteer, but as an owner anxious to save his property from lien, and can have reimbursement from the tenant, not under the equitable doctrine of subrogation, but only if tenant agreed with plaintiff to pay the same. As we have seen, not only is their lease agreement silent as to such payment, but, after much prior negotiation and discussion, the clause in the printed form of lease used, which would have imposed such liability on tenant, was striken out before its execution by these parties.

It is not clear from the pleadings whether plaintiff is suing upon the written lease, an oral understanding, or a combination of the two. Nowhere does plaintiff allege that defendant agreed either in writing or by parol to pay for this excess water rent. While a copy of the lease is attached to the amended complaint, there is no averment that the action is based on the lease.

In its answer to defendant's preliminary objections, plaintiff declares that "plaintiff's action is wholly independent of the lease." But, if the suit is not based on the written lease, why attach a copy to the com-

plaint. Under this theory; a simple averment that defendant was plaintiff's tenant for a specified term would seem to have been sufficient. Looking at the matter in the light most favorable to plaintiff, the most we can say is that its suit appears to be founded on a mutual oral understanding which, though unexpressed, it assumed existed between the parties to the effect that the law would make defendant primarily liable for excess water rents, even though provision for such liability had been stricken from the lease.

Upon this theory, the case of Gianni v. R. Russell & Co. Inc., 281 Pa. 320 (1924), is enlightening. There the tenant of a storeroom in a building sued in assumpsit for breach of his lease, alleging that, in consideration of his execution of the lease, the payment of a higher rental, and his agreement to sell no tobacco, he was to have the exclusive right to sell soft drinks in the building. The lease was silent as to such an exclusive right.

In the court below the verdict and judgment were for plaintiff tenant. In reversing and entering judgment for defendant landlord, the Supreme Court, by Mr. Justice Schaffer, said (pages 323-25):

"Appellee's counsel argues this is not a case in which an endeavor is being made to reform a written instrument because of something omitted as a result of fraud, accident or mistake, but is one involving the breach of an independent oral agreement which does not belong in the writing at all and is not germane to its provisions. We are unable to reach this conclusion.

" 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement': Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin, 142 Pa. 271, 287. 'All preliminary negotiations, conversations and

verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence': Union Storage Co. v. Speck, 194 Pa. 126, 133; Vito v. Birkel, 209 Pa. 206, 208.

"The writing must be the entire contract between the parties if parol evidence is to be excluded, and, to determine whether it is or not, the writing will be looked at and if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing': Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 517.

"When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court. . . .

"Plaintiff claims his agreement not to sell tobacco was part of the consideration for the exclusive right to sell soft drinks. Since his promise to refrain was included in the writing it would be the natural thing to have included the promise of exclusive rights. Nothing can be imagined more pertinent to these provisions which were included than the one appellee avers.

"In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index . . . is found in the circumstances whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation': Wigmore on Evidence (2d ed.) vol. 5, page 309.

"As the written lease is the complete contract of the parties and since it embraces the field of the alleged oral contract, evidence of the latter is inadmissible under the parol evidence rule. 'The [parol evidence] rule also denies validity to a subsidiary agreement within [the] scope [of the written contract] if sued on as a separate contract, although except for [that rule], the agreement fulfills all the requisites of valid contract': 2 Williston, Contracts, 1222; Penn Iron Co. v. Diller, 1 Sadler 82; Krueger v. Nicola, 205 Pa. 38; Wodock v. Robinson, 148 Pa. 503.

"There are, of course, certain exceptions to the parol evidence rule but this case does not fall within any of them. Plaintiff expressly rejects any idea of fraud, accident or mistake, and they are the foundation upon which any basis for admitting parol evidence to set up an entirely separate agreement within the scope of a written contract must be built. . .

"We have stated on several occasions recently that we propose to stand for the integrity of written con-

tracts: Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa. 516; Neville v. Kretzschmar, 271 Pa. 222. We reiterate our position in this regard."

It can be reasonably assumed that when the parties were negotiating and debating terms and conditions of their lease, they embraced in their discussions also the item, or the possibility, of additional water rents. Section 5(c) of the lease, requiring the tenant to pay "all water and sewer rent" was striken out, and while other terms were added, the matter of excess water rents was left completely omitted from the written agreement, although tenant's likely use of excess water for whatever reason should have been in the contemplation of the contracting parties.

It will be noted, too, that there is no limitation or qualification placed upon the number or kind of "installations" which the tenant was permitted to make under section 42 of the lease.

From the fact that the lease contains no provision limiting the use by the tenant of water in the operation of his business, and of the installations and plumbing facilities hereinbefore referred to, it seems reasonably clear that the parties had in mind the use of excess water, and did not intend to impose any liability upon the tenant for payment of the same. That the word "installations" would include air-conditioning equipment seems to be a reasonable conclusion.

"It is a general principle in the construction of leases that additional liability will not be imposed on a tenant unless it is clearly within the provisions of the lease": Broad and Sansom Realty Co. v. Fidelity Building Corp., 292 Pa. 287, 291 (1928), where the lease expressly required the tenant to pay water rent.

We are of opinion, therefore, that plaintiff has failed: (1) To establish primary liability upon tenant

defendant for the payment of any water rent; (2) to plead any express agreement on the part of the tenant to pay for the same, and (3) to show that the tenant's use of the excess water per se raised an implied promise of payment by him.

We are clear that the city has no action against the tenant, but may proceed only against the premises, or the owner, and that, therefore, the owner is the party primarily concerned with and liable for payment. Since there is no agreement between the owner and the tenant on the subject, and in view of the premises, plaintiff cannot maintain this action.

For the above reasons the court, on July 22, 1954, refused the motion to strike off or dismiss the amended complaint, sustained the preliminary objections to the amended complaint, and entered judgment on the pleadings for defendant and against plaintiff.